## Case No. 14,210.

### TSCHEIDER et al. v. BIDDLE.

[4 Dill. 58;[1] 5 Am. Law Rec. 689; 4 Cent. Law J. 323.]

Circuit Court, E. D. Missouri. March Term, 1877.

LANDLORD AND TENANT — LEASE — COVENANT TO RENEW—SPECIFIC EXECUTION—RENTAL TO BE FIXED BY THIRD PERSONS.

1. A lease of certain real property in St. Louis was made for ten years, with a covenant by the lessor for periodical renewals, extending through terms aggregating a period of five hundred years; the amount of rental at the end of each ten years was to be ascertained by assessors to be appointed by the parties. The lessor fraudulently sought to evade the provisions of the lease in respect to renewals. The lessee, on the faith of the covenant for renewal, had expended in buildings on the demised premises $113,000. The lessor sued the lessee at law for use and occupation,. whereupon the lessee filed this bill in equity, to stay the action at law until the lessor appointed an assessor, as required by the lease: *Held*, that a general demurrer to the bill should be disallowed; and the lessee being willing to comply with the lease as to renewal, the court entered an order staying the proceedings at law until the lessor should appoint an impartial assessor to make the valuation, reserving the right to discharge or modify the order as justice might require.

[Cited in Joy v. City of St. Louis, 138 U. S. 46, 11 Sup. Ct. 256; Union Pac. Ry. Co. v. Chicago, R. I. & P. Ry. Co., 2 C. C. A. 174, 51 Fed. 330.]

[Cited in Coles v. Peck, 96 Ind. 341; City of St. Louis v. St. Louis Gaslight Co., 70 Mo. 110.]

2. As to the specific execution of agreements to refer or to arbitrate, see note at end of case.

In equity. Catherine Biddle brought an action at law in this court against Peter Tscheider et al. for use and occupation. In her petition she simply alleges that she is owner of a certain lot of ground (describing

1 [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]

it); that Peter Tscheider et al. had occupied said lot of ground during one year with her permission; that the value of the occupation of such premises was worth the sum of —— dollars; that Peter Tscheider et al., the occupants, are bound in law to pay her that amount for such occupation, and therefore she prays judgment. In defense, Peter Tscheider et al. set up as a bar to the action a clause in an original lease for ten years, dated the 28th day of May, 1864, between Catherine Biddle and Peter Tscheider et al.; that within the last quarter of said term of ten years the said Catherine Biddle, lessor, and the said Peter Tscheider et al., lessees, should appoint two assessors,—one each,— who should proceed to ascertain the value of the said lot of ground as a naked lot, without reference to the improvement, and after having ascertained the true and fair market valuation of said lot they should fix and agree upon the rent which should be paid by the lessees for another term of ten years, which rents, however, should not be less than six per centum upon the value of the property so ascertained; that after the said assessors had so agreed upon the amount of the rental of said property, then Catherine Biddle should execute to the said lessees another lease of the lot for ten years, at the rental so fixed by the assessors. If the assessors so appointed by the parties should not agree as to the valuation of the lot, or to the rent to be paid upon that valuation, then they should select a third assessor to assist them. Then, when and if these three assessors should unanimously agree upon the valuation of said lot, and the rental to be paid for said lot, Catherine Biddle should execute a new lease for the said lot to said lessees for ten years, at the rental so fixed, and so on for each succeeding term of ten years, for the period of five hundred years. The answer then proceeds to aver that the parties have made five different attempts to have the rental of said lot fixed and determined by assessors, as provided in said original lease; that these five efforts have failed; that the failure is attributable entirely to the bad faith of Catherine Biddle, who, it is charged, appointed incompetent and prejudiced men as her assessors, and instructed and limited them as to value, with a view of forcing upon respondents, the lessees, an extravagant valuation of said premises; that by reason of her instructions and limitations, no agreement could be had among the assessors; that the only rent which Catherine Biddle is entitled to receive for said property is the rent which shall be fixed in the manner provided in said lease, and, as no rent has been fixed in the manner provided in said lease, Catherine Biddle could recover no rent whatever for the use and occupation of her said property, and that the suit for the use and occupation should be dismissed, and its progress stopped. To this answer Catherine Biddle demurred, on the ground that it was not a sufficient or legal defence to the action. After argument the demurrer was sustained, and all that portion of the answer setting out the agreement to appoint assessors and to grant a new lease upon the basis of their finding was stricken out.

The case was set down regularly for hearing on the 30th day of September, 1876. On that day Peter Tscheider et al. filed the present bill in equity in this court, in which they set out substantially the agreement and facts set out in the answer, as a bar to the action of use and occupation, and which the court held to be bad on demurrer; that no rental had been fixed in the manner provided in said agreement; that no new lease or renewal had been executed in accordance with the terms of said agreement; that the lease was obtained for the purpose of enlarging a church edifice thereon, and erecting thereon a dwelling house for the religious body using the church edifice; that, relying upon the covenants of the lease, the lessees have enlarged said church edifice, and erected a building on the demised premises, at a cost of $113,240.27; that the complainants are ready to comply with the lease in all its parts, and have five times appointed assessors, who were disinterested, to meet assessors appointed by the lessors, but the attempts to procure a valuation failed, because the lessors appointed men as assessors whose opinions as to valuation were previously known, and whom they had instructed or restricted not to go below a certain valuation, which was excessive, and fifty per cent. more than the value of the property; that the lessors' assessors made excessive valuations accordingly, whereas the lessees' assessors made fair valuation; that the lessors have purposely and fraudulently prevented any valuation of the rental, as provided by the lease, with a view to extort an unconscionable rental from the lessees, who aver their willingness to appoint an assessor to meet one appointed by the lessors, who refuse to make such an appointment; that defendant Catherine Biddle is now seeking to recover, in an action at law in this court, for use and occupation of said premises, against your orators Peter Tscheider and Joseph Weber an exorbitant and excessive rent. They therefore pray that the further prosecution of said case of Catherine Biddle against Peter Tscheider and Joseph Weber be enjoined.

The prayer of the bill of Peter Tscheider et al., as amended, is as follows: They therefore pray that plaintiff and defendants be required to appoint assessors, as required and contemplated by said lease, and in accordance with the terms and provisions thereof, and proceed to an ascertainment of the rental value of the premises, as in and by said lease contemplated and provided, and that defendants be ordered and directed to execute to said lessees a renewal term of said lease, as therein provided; and unless they do so, and in the meantime, the further pros-

ecution of the said case of Catherine Biddle against Peter Tscheider and Joseph Weber be enjoined, and for such other and further relief as the equity of the case may require, and to your honors may seem meet. The cause is now before the court on the demurrer of Catherine Biddle to the bill of complainants.

E. T. Farish, for complainants.
Grover & Ellis, for defendant.

DILLON, Circuit Judge. On the demurrer the averments of the bill in equity are admitted on the record. The lessees obtained a lease for ten years, with the right to periodical renewals for five hundred years, the rental to be ascertained by assessors in the manner provided in the lease. The lessees have entered into possession, and on the faith of the efficiency of the covenant to renew have made improvements on the demised premises costing over $100,000. At the end of ten years the lessors, instead of complying in good faith with the covenant as to renewal, act, as it is alleged, in bad faith and fraudulently, to prevent a valuation and a renewal. Hence no renewal has been had. The lessees are still in possession. The lessors bring an action at law in this court for the use and occupation of the premises,—of the whole premises, and not simply of the premises aside from the improvements made by the lessees. On a demurrer to the answer at law we held that the unexecuted provisions of the lease as to renewal, although attributable to the fault of the lessors, was no answer to the action; and this holding was in accordance with the decisions of the supreme court of Missouri in a case which arose under a similar lease. Finney v. Cist, 34 Mo. 303, and its sequel, Garnhart v. Finney, 40 Mo. 449; and see, also, Biddle v. Ramsey, 52 Mo. 153. And if, under such circumstances, the lessor can recover at law for use and occupation, he could recover the possession in ejectment, if he had seen fit to adopt that remedy. The lessees being without fault, and willing to comply with the lease, what are their rights and remedies?

They may, it is said, sue the lessor at law for a breach of the covenant in respect to renewals, and recover damages. This was so held in Garnhart v. Finney, supra, and has been adjudged in other cases. Greason v. Keteltas, 17 N. Y. 491; Hopkins v. Gilman, 22 Wis. 476.

It will be observed that it is so held, although the obligation to renew does not become consummate until the valuation is fixed, and such valuation is to be ascertained by arbitrators, who had never been appointed or acted. But assuming that on the facts stated in the present bill, the lessees might sue the lessors for damages, is this their only remedy? If so, it is obvious that the law is so defective as to shock the sense of justice,

and that it rewards the party who fraudulently seeks to evade his obligation at the expense of the party who has trusted the covenants of the lessor and expended large sums of money on the faith that he would observe those covenants. If this lease contained a simple covenant to renew at a fair valuation, such a covenant, it is admitted, could be specifically enforced, and the court would settle the valuation or rental to be paid. The lessee in such a case is not confined to an action at law for damages, but may go into equity for a specific execution of the covenant to renew. This is settled law. Is the right, the equity, to a renewal in these lessees any the less cogent and persuasive because they have provided the means for ascertaining the rental on the renewal, and the lessor purposely and fraudulently thwarts the execution of those means? As an original proposition, after much reflection, I should say that it was in accordance with sound principle to hold that if the lessor were guilty of the fraudulent conduct charged in the bill, he subjected his conscience to be laid hold of by the chancellor, who would say to him, "You have agreed to renew. The lessee has expended large sums of money on the faith of that agreement. You refuse to execute the provisions for the fixing of the valuation by arbitrators. You cannot, therefore, object if the court, with the concurrence of the lessee, proceeds to fix the valuation under the provisions of the lease." Some adjudications, however, have been made, with which it might not be easy to reconcile the view just stated. Milnes v. Gery, 14 Ves. 400; Greason v. Keteltas, 17 N. Y. 491; Hopkins v. Gilman, 22 Wis. 476. These cases proceed upon the notion that such provisions as those in this lease are in effect an agreement to arbitrate, and that agreements to arbitrate will not be specifically enforced in equity. I agree to the reasonableness of the doctrine that a court of equity will not enforce a specific performance of an agreement to arbitrate. The grounds of this doctrine and the cases in its support are given by Mr. Justice Story in Tobey v. County of Bristol [Case No. 14,065]. To refuse judicially to enforce an agreement to arbitrate occasions no injustice, for the courts remain open to the parties, with better provisions for securing justice than are possessed by arbitrators. So, when the refusal of a court to appoint or compel the appointment of arbitrators, or substitute its judgment for the judgment of arbitrators, will occasion no injury which cannot be fully and adequately redressed by an action at law, as in the ordinary case of an agreement to sell, it is entirely consistent with sound principle for a court of equity to decline to interfere. In this view I can agree to the actual decision on the facts of the cause of Sir William Grant, the master of the rolls, in the leading case in Milnes v. Gery, 14 Ves. 400, without assenting to the reasoning

of that great judge that equity is absolutely disabled from interfering to compel a specific execution unless the price of the property has been ascertained in the prescribed mode. That was the case of an agreement to sell. The parties could be placed in statu quo. No mala fides was imputed, and the failure of arbitrators to agree was not owing to bad faith. Under such circumstances the refusal of the court to appoint its own master to fix upon the price can be well justified. But such a case as that made by the present bill is entirely different. Here the parties cannot be put in statu quo; here mala fides is imputed; here a remedy at law for damages does not satisfy the covenant or the demands of enlightened justice. It is a well-settled principle that courts will not compel the specific execution of a mere agreement to arbitrate; but I am strongly convinced that it is erroneous to apply that principle to cases like the present, where it would result in manifest and gross injustice. The cases somewhat like the one before us (Greason v. Keteltas, 17 N. Y. 491; Hopkins v. Gilman, 22 Wis. 476), while asserting that the lessees have a remedy at law, but none in equity, for specific performance, deserve, I think, further consideration before assenting to their entire correctness.

In Greason v. Keteltas the refusal of the lessor to appoint arbitrators or take steps for an appraisal was held to subject him to liability at law for the value of the building on a valuation fixed by the court, although the covenant was that this valuation was to be fixed by arbitrators. If such refusal on the part of the lessor is a breach of the covenant-so as to render him liable for damages or to pay for the improvement on a judicial valuation, why is it not such a breach of duty as to justify a court of equity, when substantial justice requires it, to compel the lessor either to make the appointment or to make one for him, or otherwise judicially to ascertain the valuation? Where is the equity of the party who purposely and fraudulently seeks to evade the contract on his part to insist that a valuation by arbitrators is a sine qua non to equitable relief? Is he not in such a case estopped to set up his own wrong and fraud in defence to the relief to which his adversary is otherwise clearly entitled?

I suggest these views that attention may be directed to this subject, and not because they are absolutely essential in this stage of the cause to support the present bill. I admit that in specific performance the court must enforce the contract made by the parties, and that it cannot ordinarily modify this contract or make another and enforce that: but this sound and necessary principle does not preclude the operation of the principle of estoppel where this principle is necessary in order to do justice. Where the covenant to renew on an appraisal by third persons has, as in this case, been acted on by the lessee, and where the failure to secure a renewal will work an injustice for which an action for damages is not a complete remedy, and where the lessor fraudulently thwarts the appraisal, why is he not estopped to set up the want of an appraisal caused by himself as a bar to appropriate equitable relief?

The leading English decisions, from Mitchell v. Harris, 2 Ves. Jr. 129, to Scott v. Avery, 5 H. L. Cas. 811, and Dawson v. Lord Otho Fitzgerald, L. R. 9 Exch. 7, have been critically examined, and, when thoroughly understood, I do not think that in their essential facts they are in conflict with the above views. And the right to some equitable relief in cases like the present is directly decided by the supreme court of Missouri, under a lease exactly similar to the one before us, in Biddle v. Ramsey, 52 Mo. 159, and is also recognized by the supreme court of Wisconsin in the case of Hopkins v. Gilman, before cited.

In this connection it may be useful to refer to a provision in the English common-law procedure act of 1851, the eleventh section whereof provides that: "Whenever the parties to any deed or instrument in writing to be hereafter made or executed, or any of them, shall agree that any existing or future difference between them, or any of them, shall be referred to arbitration, and any one or more of the parties so agreeing, or person or persons claiming through or under him or them, shall nevertheless commence any action at law or suit in equity against the other party or parties, for any of them, or against any person or persons claiming through or under him or them, in respect to the matters so agreed to be referred, or any of them, it shall be lawful for the court in which action or suit is brought, or a judge thereof, on application by the defendant or defendants, or any of them, after appearance and before plea or answer, upon being satisfied that no sufficient reason exists why such matters cannot be or ought not to be referred to arbitration, according to such agreement as aforesaid, and that the defendant was at the time of bringing such action or suit, and still is, ready and willing to join and concur in all acts necessary and proper for causing such matters so to be decided by arbitration, to make a rule or order staying all proceedings in such action or suit on such terms, as to costs and otherwise, as to such court or judge may seem fit; provided, always, that any such order may at any time afterwards be discharged or varied as justice may require." 17 & 18 Vict. c. 125, § 11; 2 Daniell, Ch. Prac. (4th Am. Ed.) p. 1861.

It may be true, as suggested by the defendant's counsel, that the statute had its origin in the doctrine of the cases in the English courts before referred to, which, to a large extent, nullified agreements to refer matters in dispute to arbitrators; but, if so, it shows

that the cases which were relied upon by defendant's counsel were productive of such results that this enactment was deemed expedient. However it may be in England, I see no reason for the position that such a statute in this country is necessary in order to justify a court of equity in making by analogy such a rule or order as therein provided for when justice requires it and no good reason exists for not making it.

A rule or order will accordingly be entered in this case staying the prosecution of the law action for rent until the further order of the court. If the law action would settle the amount of rental on a renewal, there might be good reason for allowing it to proceed; but it will not have that effect. Such a rule or order does not contravene the principle contended for by the defendant that before there can be a decree for renewal the rental must be fixed by arbitrators and cannot be fixed by the court, since the object of the rule or order is to compel the defendant (lessor) to himself appoint the assessor, who is to represent him. If he appoints an impartial person, without instructions, and he is met with an impartial appointment by the lessee, it is probable that an agreement as to the rental will be reached. The defendant is, of course, at liberty to answer the bill and contest its averments. When the answer is filed and the proofs are in, the court can discharge or vary the order here made, as justice may require. The demurrer to the bill is accordingly disallowed, and the rule or order, as above suggested in respect to the law action, will be entered. Ordered accordingly.

NOTE. In Mitchell v. Harris (A. D. 1793), 2 Ves. Jr. 129, it was held that a general agreement in a contract to refer all disputes arising thereunder to arbitrators, was no bar to a bill for discovery of matters under the contract in aid of a contemplated action at law; the lord chancellor observing "that a mere agreement to refer can take away the jurisdiction of any court in Westminster Hall. where no reference has taken place." In Milnes v. Gery (1807) 14 Ves. 400, the master of the rolls, in respect to an agreement to sell real estate at a valuation to be fixed by arbitrators, and where, after several meetings, they were unable to agree either upon the price or an umpire, and where no mala fides was imputed, held that a bill for specific performance, praying that the court will appoint a person (its master) to make the valuation, would not lie.—the reason being that the vendor had a right to have the price ascertained in the specified mode; distinguishing the case from one of an agreement to sell at a fair valuation where no particular means of ascertaining the value are pointed out, and where, therefore, the court is at liberty to adopt any means adapted to the purpose. In Morse v. Merest (1821) 6 Madd. Ch. 26, it was held that a vendor who agrees to sell at a valuation to be fixed by A, B, and C cannot be compelled by a court of equity to sell at any other price, but, if the vendor refuses to permit the referees to come upon the land in order to fix upon a valuation. equity will remove this impediment, and decree the defendant to permit the valuation according to the contract. In Greason v. Keteltas (1858) 17 N. Y. 491. a lease was made, with a covenant by lessor to pay, at the end of the term, for the buildings, at a price to be fixed by arbitrators,

or if he did not pay for the buildings, to renew at a rent to be determined by arbitrators. The lessor refused to appoint arbitrators to take any steps towards an appraisal, and he was held liable as at law for the value of the buildings on a valuation fixed by the court, the court observing that the case was not one in which there could be a specific performance, since "the covenant to renew is entirely dependent on the failure to pay (for the buildings), and there could be no such failure until the value was ascertained. and the only decree for a specific performance which the court could make would be one compelling the defendant to choose an appraiser; it being well settled that courts of equity will never entertain a suit to compel parties specifically to perform an agreement to submit to arbitration,"—citing Gourlay v. Duke of Somerset. 19 Ves. 431; Agar v. Macklew, 2 Sim. & S. 418; Mitchell v. Harris, 2 Ves. Jr. 129. The case of Greason v. Keteltas, supra, was followed in Hopkins v. Gilman (1868) 22 Wis. 476, where a decree compelling the lessor to choose an arbitrator to fix the rent was reversed, and it was held that the agreement to renew could not be specifically executed, and that the lessee was entitled to have the value of the improvements determined by the court (though the lease provided they should be determined by arbitrators), and to restrain the lessor's action for possession until the payment of the value of the improvements. In Biddle v. Ramsey (1873) 52 Mo. 153, on a lease like the present, where the lessee refused in bad faith to appoint a disinterested arbitrator and remained in possession, held that a bill in equity would lie by the lessor for the settlement of the rights of the parties.

A court of equity will not enforce an agreement to submit a question or dispute to arbitrators— Tobey v. County of Bristol (1845) [Case No. 14,065]—where the grounds of the doctrine and the cases in its support are given. The effect of agreements to refer disputes to arbitration is settled in England by the case of Scott v. Avery, 5 H. L. Cas. 811; and the doctrine of that case, as understood by the English court of appeals, will be found clearly stated in Dawson v. Lord Otho Fitzgerald, L. R. 9 Exch. 7. See, also. Yeomans v. Guard, etc.. Ins. Co., 3 Cent. Law J. 792, and cases cited: Randel v. Chesapeake & D. Canal Co., 1 Har. (Del.) 275; Contee v. Dawson, 2 Bland (Md.) 273: Gray v. Wilson, 4 Watts (Pa.) 39: Stone v. Dennis. 3 Port. (Ala.) 239; Scott v. Corporation of Liverpool, 3 De Gex & J. 334: Caledonian Ry. Co. v. Greenock & W. B. Ry. Co., L. R. 2 H. L. Sc. 347. Refusal to refer according to agreement. ground of action at law for damages for such refusal. Livingston v. Ralli, 5 El. & Bl. 132.

In the principal case, after the delivery of the foregoing opinion. an answer was filed, and the court refused to modify the order staying the law action, after which new assessors were appointed in pursuance of the provisions of the lease. who fixed a rental satisfactory to the parties, and the case was accordingly settled.