CASTLE CREEK WATER CO. v. CITY OF ASPEN.

(Circuit Court of Appeals, Eighth Circuit. June 23, 1906.)

No 2,379.

1. SPECIFIC PERFORMANCE—SALE OF WATERWORKS AT VALUE TO BE APPRAISED.

There was a contract between a water company and a city for the construction of waterworks and their operation for 20 years, wherein the company agreed to give the city the option to purchase the works at the end of the term at a price based on their productive worth, to be determined by four appraisers chosen by the parties and a fifth to be chosen by the four, on condition that the city gave notice of its intention to buy a year before the expiration of the term. The city gave the notice, but subsequently refused to appoint appraisers and to complete the purchase. *Held*, these facts disclosed an equity in the complainant, which entitled it to a specific performance of the contract, and this remedy was more complete and efficient than any it had at law.

2. SAME—SALE AT VALUE TO BE APPRAISED—RULES—ENFORCED IF STIPULATION FOR APPRAISERS SUBSIDIARY AND PARTIES NOT IN STATU QUO; OTHERWISE NOT.

Where, in a contract of sale of real estate at a price to be fixed by appraisers to be chosen by the parties, the stipulation for the appraisers

is not a condition nor the essence of the agreement, but is subsidiary or auxiliary to its main purpose and scope, and the parties cannot be left or placed in statu quo by a refusal to enforce performance, a court of equity may determine the price itself, or by its master or by appraisers of its own selection, and may enforce specific performance of the agreement of sale. But where the stipulation for the appraisers is a condition or the essence of the contract, and a refusal to enforce it will leave the parties in their original situations when the contract was made, a court of equity will not enforce specific performance of it.

3. VENDOR AND PURCHASER—OPTION TO PURCHASE CONTINUING OFFER—ACCEPTANCE EXHAUSTS OPTION AND COMPLETES CONTRACT.

An option to purchase is a continuing offer by the vendor to sell. Its acceptance by the vendee completes the contract, exhausts the option, and estops the vendee from subsequently repudiating it, or choosing the other alternative.

[Ed. Note.—For cases in point, see vol. 48, Cent. Dig. Vendor and Purchaser, § 23.]

4. EQUITY—ADEQUATE REMEDY AT LAW.

The adequate remedy at law which will prevent relief in equity must be as certain, complete, prompt, and efficient to attain the ends of justice as the remedy in equity.

[Ed. Note.—For cases in point, see vol. 19, Cent. Dig. Equity, §§ 151–163.]

5. SAME—ACCOUNTING.

Where the remedy at law and the remedy in equity involve an accounting and the consideration of many items, the remedy in equity is more complete and efficient and better adapted to attain the ends of justice than the remedy at law.

[Ed. Note.—For cases in point, see vol. 19, Cent. Dig. Equity, § 152.]

6. SPECIFIC PERFORMANCE—CONTRACT FOR SALE OF WATERWORKS—BREACH—REMEDY AT LAW.

Where a city has refused to perform its contract to purchase the waterworks of a company at a price based on their productive worth, to be determined by appraisers, the water company has no remedy at law as complete and efficient as the specific performance of the contract in equity.

[Ed. Note.—For cases in point, see vol. 44, Cent. Dig. Specific Performance, §§ 5–8.]

(Syllabus by the Court.)

Appeal from the Circuit Court of the United States for the District of Colorado.

C. S. Thomas (Wm. H. Bryant and Wm. P. Malburn, on the brief), for appellant.

C. W. Waterman (Joel F. Vaile, James H. Pershing, and Harold W. Clark, on the brief), for appellee.

Before SANBORN and VAN DEVANTER, Circuit Judges, and PHILIPS, District Judge.

SANBORN, Circuit Judge. The town of Aspen made a contract with Cowenhoven & Brown wherein it granted to them the use of its streets for the purpose of laying water mains and pipes, and agreed to pay them hydrant rentals for 20 years, and they covenanted to erect and maintain waterworks, and to supply the town and its inhabitants with water during that time. One of the terms of this agreement was that the town should have the right to purchase the waterworks at the expiration of the 20 years on condition that it should give notice of

its intention to buy one year in advance of the date of the purchase, and that in that event, if the parties should fail to agree upon the price, the same should be determined by five appraisers, four to be chosen by the parties and the fifth by the four, and that this price should be based upon the productive worth, and not on the cost of the works. The assigns of Cowenhoven & Brown constructed waterworks at an expense of $150,000, and supplied water to the town and its inhabitants. The complainant, the Castle Creek Water Company, succeeded to the rights of Cowenhoven & Brown, and the town of Aspen became the defendant, the city of Aspen. One year before the expiration of the term of the contract, the city gave notice to the complainant that it would "purchase said waterworks and appurtenances at the time and in accordance with the provisions of said proposition and ordinances." The parties failed to agree upon the price of the works, and the city refused to appoint appraisers, and notified the complainant that it would not be bound by the contract. Thereupon the water company exhibited its bill, in which it set forth the facts that have been recited, and prayed for a specific performance of the agreement of purchase. The court below sustained a general demurrer and dismissed the bill, and the complainant appealed.

The main purpose and scope of the contract of 1885, which is the subject of this controversy, was to procure waterworks for the city of Aspen and for its inhabitants. This was the great desideratum which induced the town to enter into the agreement. The chief object of the water company was to secure adequate compensation for the construction of the works and the supply of the water by means of the hydrant rentals and the payments for water by private consumers during the term of the agreement. The stipulation regarding the sale of the works was an incidental part of the main agreement, and that agreement did not constitute a contract of sale of the waterworks. Nevertheless, the agreement of the company that the city should have the option to purchase them at an appraised value was an inseparable part of this original contract. It was a continuing and irrevocable offer of the water company to sell. The notice given by the city that it would purchase upon the terms specified in this offer was an exercise of its option, and an irrevocable acceptance of the water company's offer. The city had but one option. When it had exercised it, its power to choose was exhausted. An election once made estops the elector. He may not revoke his choice and select another alternative. Bishop on Contracts, § 784; Childs v. Stoddard, 130 Mass. 110; Brown v. Insurance Co., 1 El. & El. 853. The irrevocable offer and the irrevocable acceptance attested the meeting of the minds of the parties, and constituted a contract of sale of the waterworks. Cherryvale Water Co. v. City of Cherryvale, 65 Kan. 219, 69 Pac. 176; Rockport Water Co. v. Inhabitants of Rockport, 161 Mass. 279, 37 N. E. 168; Braintree Water Supply Co. v. Braintree, 146 Mass. 482, 487, 16 N. E. 420; Chadsey v. Condley, 62 Kan. 853, 855, 62 Pac. 663; 21 Am. & Eng. Enc. of Law (2d Ed.) 929.

But counsel for the city contend that a court of equity may not enforce the specific performance of this contract, because it provides that

the price based upon the productive worth shall be appraised by four experts to be chosen by the parties and another to be selected by the four. They invoke the rules that a court of equity will not specifically enforce an agreement to arbitrate a disputed claim (Oregon & W. Mtg. Sav. Bank v. American Mtg. Co. [C. C.] 35 Fed. 22; Tobey v. County of Bristol, Fed. Cas. No. 14,065), or a contract of sale wherein the price is not fixed, but is to be determined by appraisers (Milnes v. Gery, 14 Ves., Jr., 400; King v. Howard, 27 Mo. 21; Van Doren v. Robinson, 16 N. J. Eq. 256); and they insist that these rules apply to cases of the nature of that in hand, where the agreement of sale at a valuers' price is a part of a lease or of a broader contract (Agar v. Mackalew, 2 Sim. & S. 418, 432; Greason v. Keteltas, 17 N. Y. 491; City of St. Louis v. St. Louis Gaslight Co., 70 Mo. 69, 94; Montgomery Gaslight Co. v. City of Montgomery, 87 Ala. 245, 6 South. 113, 4 L. R. A. 616.

The general rule that contracts for the sale and conveyance of real estate may be specifically enforced by a court of equity has become firmly established, upon the ground that actions at law for the breaches of these contracts do not place the parties in the same situation in which they were before the agreements were made, and for that reason do not afford adequate relief. Contracts to arbitrate disputed claims escape this rule, because the failure to enforce them leaves the parties in their original situations, with their original claims and rights of actions. Separate agreements of sale of real estate, in which the prices have not been agreed upon or in which they are to be fixed by valuers to be chosen by the parties, do not fall within the rule for the same reason, so long as they have not been executed in whole or in any substantial part. In contracts of this class the price is an essential condition, which determines the nature and the value of the contract, and until it is fixed the parties may be left in statu quo by the mere refusal to enforce the agreement. They fall so near the line, however, that a court of equity will readily enforce an agreement of sale for a fair price, or for the reasonable value of the property, on the ground that that is certain which can be made certain, and that the court may itself ascertain the fair price or the reasonable value. Milnes v. Gery, 14 Ves., Jr., 400, 404. Thus far the two rules that equity will specifically enforce a contract for the sale of real estate and that it will not enforce an agreement to arbitrate claims or to appraise property run pari passu.

There is, however, a class of cases to which both rules appear to apply, but in which the application of one necessarily excludes the use of the other. They are cases in which a contract of sale of real estate springs from a broader agreement, which has been partly performed, so that the parties may not be placed in their original situations by a mere refusal to enforce the agreement of sale, and the stipulation for the appraisal of the value or the determination of the price is a subsidiary or auxiliary part of the same contract. In cases of this nature it is clearly inequitable to permit a party to an agreement to deprive a complainant of its benefit by his own wrong by means of his unjustifiable refusal to appoint the appraisers which he has solemnly agreed

to select, and in that way to avoid the discharge of his obligation. Large amounts of money are often invested in reliance upon such an agreement, and the defaulting party frequently receives the substantial benefits of the contract before he avails himself of this device to repudiate it. He then refuses to name appraisers, and argues that his contract is that the price of the property shall be determined by persons whom the parties shall select, and that a court of equity may not lawfully fix the price or select the parties to determine it because such a course of action would substitute the master or the court for the parties' appraisers, and would thus make a new agreement for them, which no court may lawfully do. The answer to this contention, however, is that it is not the court but the defaulter himself who by his own refusal to perform his contract deprives himself of the benefit of the appraisers to be chosen by the parties; that it does not lie in his mouth to say that the court may not select the valuers as long as he wrongfully refuses to do so, and that he is estopped from taking advantage of his own wrong to prevent the complainant from successfully invoking the aid of a court of equity to compel him to perform his agreement. The authorities upon this subject are not entirely in accord, but the more cogent reasons and the weight of authority sustain these salutary rules: Where in a contract of sale of real estate at a price to be fixed by appraisers chosen by the parties, the stipulation for the valuers is not a condition nor the essence of the agreement, but is subsidiary or auxiliary to its main purpose and scope, and the parties may not be left or placed in statu quo by a refusal to enforce the contract, a court of equity may determine the price itself, by its master or by appraisers of its own selection, and may enforce specific performance of the agreement of sale. But where the stipulation for the appraisers is a condition or the essence of the contract of sale, and a refusal to enforce it will leave the parties in their original situations when the agreement was made, a court of equity will not specifically enforce it. Union Pac. Ry. Co. v. Chicago, R. I. & P. Ry. Co., 51 Fed. 309, 330, 2 C. C. A. 174, 244; Tscheider v. Biddle, 4 Dill. 58, 62, Fed. Cas. No. 14,210; Cherryvale Water Co. v. City of Cherryvale, 65 Kan. 219, 69 Pac. 176, 180; Town of Bristol v. Bristol & Warren Waterworks, 19 R. I. 413, 34 Atl. 359, 361, 32 L. R. A. 740; Fry on Specific Performance, §§ 247, 342, 348; Waterman on Specific Performance, §§ 44, 47; Pomeroy on Contracts, §§ 150, 151; Coles v. Peck, 96 Ind. 333, 339, 49 Am. Rep. 161; Herman v. Babcock, 103 Ind. 461, 3 N. E. 142; Biddle v. Ramsey, 52 Mo. 153, 159; Black v. Rogers, 75 Mo. 441, 449; Braintree Water Supply Co. v. Braintree, 146 Mass. 482, 487, 16 N. E. 420; Parson v. Ambos (Ga.) 48 S. E. 696; Hall v. Warren, 9 Ves. 605; Gourlay v. Duke of Somersett, 19 Ves. 429; Richardson v. Smith, L. R. 5 Ch. 648; Dinham v. Bradford, L. R. 5 Ch. 519.

The case under consideration falls far within the first rule. The main purpose and scope of this contract was the construction of the waterworks and the supply of water to the city and its inhabitants. The stipulation for a determination of the price by appraisers in case of a sale was neither a condition nor the essence of the agreement nor of the contract of sale. It was an incident of each, a stipulation not

of substance but of mode. Moreover, the contract prescribes the standard by which the price shall be measured. It provides that it shall be based upon the productive worth of the waterworks, and not upon their cost. The stipulation for appraisers, therefore, is but a designation of the method of the selection of those who shall take the necessary accounting, and apply this measure for the determination of the price. The ascertainment of this standard of measurement is necessarily conditioned by an accounting of the income and expenses of the waterworks during a reasonable length of time anterior to the date of sale, and a calculation from this accounting and from the net income it will disclose of the productive worth of the property. The consideration and settlement of issues dependent upon the taking of accounts composed of many items is one of the great heads of equity jurisprudence, and the appointment of an accountant, the examination and confirmation of his report, are the ordinary functions of the chancellor. The stipulation for the choice of appraisers is therefore merely incidental to the contract of sale, and it provides for an act which may be well and wisely performed by a court of equity. Again, the water company or some of its predecessors in interest invested thousands of dollars in these works and in their operation, while the city held them bound by their agreement to continually offer to sell them to the city for their productive worth. The city may not rescind the original agreement of 1885 because it has received the substantial benefits of the contract, and the parties cannot be restored to their original situations.

In October, 1904, the city exercised its option, and accepted the continuing offer of the company to sell. By the terms of the contract of 1885 the city had agreed to notify the water company whether or not it would accept this offer as early as October 31, 1904. The acceptance of the city bound the water company to sell its property to the city at the price fixed in the contract, and it was not until September, 1905, that the city declined to perform, and repudiated its contract of purchase. If the city was not to buy the property, the water company had the privilege and the right by the express terms of the contract to secure another franchise, or an extension of the franchise which it held, if it could do so, and if it could not, to sell to another who might be able to accomplish this result; and it had the right to know that it could exercise this privilege, and that it could embrace every opportunity that offered during the 12 months which followed October 31, 1904. These were valuable rights and opportunities. The acceptance of the offer by the city deprived the water company of all of them for more than 10 of the short 12 months during which the city had covenanted with the water company that it should be free to exercise and enjoy them if the city itself did not purchase, and it is now too late to restore them. The lost opportunities of those 10 months can never be returned to the water company, and to permit the city to deprive the water company of its right under the contract to protect its property or to sell it to another by holding it to its agreement to sell it to the city until it was too late for the company to exercise that right, and until its property was at the mercy of the city, and then to permit the

city to repudiate its contract, would be both unjust and inequitable. The contract of sale of 1904 may not be lawfully rescinded now, because it is impossible to place the parties in the same situations in which they stood when the city accepted the offer.

The conclusion is that the stipulation that the price of the water-works, based upon their productive worth, shall be determined by appraisers chosen by the parties presents no valid objections to the enforcement of the specific performance of this contract by a court of equity, because this stipulation is not a condition nor the essence of the agreement, but a subsidiary and incidental part of it, because the contract has been partly performed, the city has received substantial benefits from it, and the parties cannot be placed in statu quo, and because a failure to enforce it might, and probably would, result in a gross injustice by permitting the city to take advantage of its own wrong—of its refusal to select appraisers, as it agreed.

The repeated remark of counsel for the city that the basis of the price—the productive worth of the waterworks—is not their reasonable or their fair value, that it is susceptible of misrepresentation by false accounts and fraudulent practices, and that for this reason an enforcement of the contract would be unjust, has not escaped attention. But the parties to this contract were of the opinion that the productive worth of the property indicated its fair value and a fair price for it, for they agreed that this should be its price. This conclusion commends itself to our judgment, and we concur in it. No more equitable or rational basis for the appraisal of the value of the property has occurred to us. The apprehension of falsity in the account is without basis to support it. There is no allegation or indication that the complainant has not kept just and true accounts, nor that it will fail to faithfully disclose the income and the expenses of the property. The presumption is that its accounts are correct and true, and that it will faithfully discharge its duty. When the contrary appears, ample time will remain to consider its effect. No injustice can therefore result from an enforcement of the sale at the price stipulated in the agreement.

.. Finally, counsel object to the maintenance of this suit upon the ground that the complainant has an adequate remedy at law. But the adequate remedy at law which will deprive a court of equity of jurisdiction must be as certain, complete, prompt, and efficient to attain the ends of justice as the remedy in equity. Boyce's Ex'rs v. Grundy, 3 Pet. 210, 215, 7 L. Ed. 655; Williams v. Neely, 134 Fed. 1, 67 C. C. A. 171, 180, 69 L. R. A. 232. An action at law for damages for the refusal of the city to appoint appraisers, or an action at law for the price of the works, necessarily involves an accounting of the income and expenses of the property—an accounting which a court of equity with its deliberate methods, its power to select men of training and experience in work of this nature, its authority to consider and to modify their reports after exceptions and hearings, is alone competent to fairly take and justly determine. No remedy at law which necessitates the submission of such questions to a jury is either adequate or as efficient to attain the ends of justice as this remedy in equi-

ty. Gunn v. Brinkley Car Works, etc., Co., 66 Fed. 382, 384, 13 C. C. A. 529, 531; Fechteler v. Palm Bros. & Co., 133 Fed. 462, 465, 66 C. C. A. 336; Hayden v. Thompson, 71 Fed. 60, 63, 17 C. C. A. 592, 595. The water company cannot deliver the waterworks to the city, and bring an action at law for their price because the municipality refuses to accept them. The company cannot tender the works and then abandon them and bring its action at law, because these works supply the city and its citizens with water, and the public interest, the danger of fire, the domestic necessities of the people of the city forbid the cessation of their operation. Barton v. Barbour, 104 U. S. 126, 134, 26 L. Ed. 672; Joy v. St. Louis, 138 U. S. 1, 47, 11 Sup. Ct. 243, 34 L. Ed. 843. A court of equity alone possesses powers sufficiently elastic and comprehensive to continue the operation of the works, if the interest of the public demands it, to fairly take the accounting which conditions their productive worth, and to render a decree that the property be conveyed, and that the price be paid at such time and on such terms as will best conserve and enforce the rights of all the parties in interest. It alone has plenary power to enforce this contract, and the water company has no remedy at law as complete and efficient as the remedy in equity. It has no remedy at law that will secure it adequate relief. The demurrer should be overruled, the defendant should be permitted to answer, and, unless a defense not yet suggested is presented, the court below should appoint a master to ascertain, under its direction and subject to its approval, the productive worth of the works, and should enforce the performance of the contract of sale. The decree below is accordingly reversed, and the case is remanded to the court below for further proceedings not inconsistent with the views expressed in this opinion.