Coles *et al. v.* Peck.

---

No. 11,489.

## COLES ET AL. *v.* PECK.

SUPREME COURT.—*Jurisdiction.*—*Amount in Controversy.—Appeal.*—On appeal to the Supreme Court of a case commenced before a justice of the peace, the amount in controversy is determined not alone by the complaint, but also by any set-off or counter-claim, and if it thus appears that there is more than $50 in controversy, the appeal will lie under section 632, R. S. 1881.

LEASE.—*Renewal or Purchase.*—*Election.*—*Specific Performance.*—*Equity.*—A lease of a lot for a term provided for the erection of a building on the lot by the lessee, and at the end of the term, the lessor could elect to renew the lease, or buy the building, or sell the lot, at a price to be ascertained by referees; the lessor failed to elect.

*Held,* that the lessee could then elect, and, having chosen to purchase the lot, and the lessor refusing to join in a reference to fix the price, could maintain suit against the lessor for equitable relief.

From the Ohio Circuit Court.

*A. C. Downey,* for appellants.

*J. S. Jelley,* for appellee.

NIBLACK, J.—On the 6th day of March, 1873, Eliza Peck, by an instrument in. writing, mutually executed, leased to Reece N. P. Buchanan and James Buchanan, a lot of ground in the city of Rising Sun, for a period of ten years at the rate of $50 per year, payable annually in advance, the term to commence on the 10th day of March, 1873, and end on the 10th day of March, 1883, and the lessees to have the privilege of erecting on the lot, and occupying during their term, a two-story brick house, suitable for business purposes. The instrument contained the following additional provisions:

"And it is further agreed between said parties, and made part of the conditions of this lease, that at the expiration of the same the said lease is to be renewed and continued for another term of time of ten years on the same terms, that is to say, $50 per year, or the party of the first part is to purchase the building and improvements from the party of the second part, or the party of the second part is to purchase the grounds. Either one of the three is to be done, and that at the option of the party of the first part, and she shall notify the other party twelve months before the expiration of the time which one she will elect to do. And in case the lease is not renewed, and a sale is to take place as in either case above named, then each party is to choose a competent disinterested freeholder who shall appraise the value of the ground or building, as the case may be, and they shall have

power, in case they see proper to choose a like third person, and the party who is to purchase shall pay to the other the amount so stated by them to be the value. And if this lease is renewed for the second term of ten years, then at the expiration of that time sale from one to the other shall be made as above stated, either the land to the party of the second part or th᾽ building to the first party, to be determined as above set forth. And all the terms, covenants and conditions of this lease shall extend to the heirs, administrators, executors or assigns of the parties to the same."

The Buchanans went immediately into possession and soon thereafter erected on the leased lot a two-story brick building of the value of $3,000. During the year 1877 all the interests and the estates of the Buchanans in the lease were assigned and transferred to John B. Coles and Daniel S. Wilber, who very soon went into and have ever since continued in possession of the leasehold premises.

On the 20th day of March, 1883, Eliza Peck, the lessor, commenced this action against Coles and Wilber by filing a complaint against them before a justice of the peace for the sum of $50, as the amount alleged to be due in advance for rent of the leased lot from the 10th day of March, 1883, to the 10th day of March, 1884. Coles and Wilber appeared before the justice and answered: *First.* In general denial. *Second.* By way of cross complaint, setting up the lease and the matters connected with it herein above referred to, and averring the performance of all the covenants and conditions of the lease on their part; also averring that the plaintiff failed to elect whether she would renew the lease, or purchase the building on the leased ground, or sell the ground to the defendants, and to notify the defendants of her election in the premises twelve months before the expiration of the term of the lease, or at any other time; that on the 3d day of February, 1883, they, the defendants, elected to purchase the leased ground, and so notified the plaintiff; that they thereupon selected Richard M. Jones, a competent and disinter-

ested freeholder of said city of Rising Sun, as an appraiser to appraise said leased ground, fixing the time for said appraisement for the 10th day of March, 1883, and the place at the front door of the building on the leased ground, of all which they notified the plaintiff in writing on said 3d day of February, 1883; that on the 10th day of March, 1883, the said Richard M. Jones appeared at the time and place named in the above mentioned notice in writing, but the plaintiff failed and refused to select any person on her part to appraise the leased ground which the defendants had so elected to purchase; that the plaintiff so failing and refusing, the defendants immediately selected George B. Gibson, also a competent and disinterested freeholder of the city of Rising Sun, to act also as an appraiser of the leased ground in question; that the said Jones and Gibson then and there proceeded to appraise said leased ground, and appraised the same at $322, of which they at once gave notice in writing both to the plaintiff and defendants; that after receiving notice of such appraisement, that is to say on said 10th day of March, 1883, the defendants tendered to the plaintiff, and offered to pay her, in legal tender United States treasury notes, said sum of $322, on condition that she would make and deliver to them a good and sufficient deed of conveyance for said leased land, but the plaintiff refused to accept said sum of money as well as to execute such a deed; that the defendants were ready and willing to pay said sum of money on the condition of receiving a deed, and would pay the money into court at any time when required so to do, as a means of obtaining a specific performance of the contract contained in the lease. Wherefore the defendants demanded a specific performance of said contract, and damages in the sum of $3,000, as well as all other proper relief.

The justice certified the cause to the circuit court, upon the ground that the matters alleged in the cross complaint put in issue the title to real estate.

In the circuit court a demurrer to the cross complaint was

Coles *et al. v.* Peck.

·sustained, and a trial resulted in a finding and judgment for the plaintiff in the sum of $50.

Error is first assigned upon the decision of the circuit court ·sustaining the demurrer to the cross complaint; but as preliminary to the consideration of the question of the sufficiency of that pleading, the appellee has moved to dismiss this appeal, upon the ground that the action was commenced before a justice of the peace, and that the amount in controversy below did not really exceed $50.

In determining the amount in controversy upon an appeal to this court in a cause originating before a justice of the peace, we must look to the set-off, counter-claim or cross complaint as well as to the complaint. *Shriver* v. *Bowen,* 57 Ind. 266; *Bowlus* v. *Brier,* 87 Ind. 391.

Taking into consideration the cross complaint as well as the complaint in this cause, we find much more than the sum of $50 in controversy. The motion to dismiss this appeal can not, therefore, be sustained.

The facts alleged in the cross complaint present some more novel and much more difficult questions. The first is: Did the failure of the appellee to avail herself of the option reserved to her in the lease transfer to the appellants the right to exercise a similar option on their part?

Viner, in his General Abridgment, in volume 9, on page 362, says: "If a man sells trees growing upon his land, excepting six oaks, the exceptor is to have the election, and if there be a time limited, he must do it during such time, but if he slip the time, then the other shall elect." Story on Contracts, at section 816, in treating of alternative contracts, concludes: "But if the person, by his own wrong or default, lose his election,—as if he be bound, in the alternative, to do one of two things by a certain day, and he suffer the day to pass, without making an election by performing one or the other, the other party may elect which he will demand." Bouvier, in his Institutes, volume 1, section 693,

holds a similar doctrine, saying: " The right to choose which of two things is to be delivered to fulfil an alternative obligation, called the *right of election,* is vested in the party to whom it is given by the agreement; but when there is no one selected to exercise this right, it belongs to the first agent, or he who is to do *the first act,* and on his failure to exercise it in proper time, the right passes to the other party."

From illustrations given and various exceptions noted, the doctrine of these extracts is only applicable to alternative obligations which are distinctly disjunctive, and not to cases in which the law, or the evident intention of the parties, implies an election. As thus distinguished, this doctrine is, to a greater or less extent, supported by the cases of *Duerson* v. *Bellows,* 1 Blackf. 217, *Conwell* v. *Smith,* 8 Ind. 530, and *Ireland* v. *Montgomery,* 34 Ind. 174, and may, as we believe, be safely applied to the alternative reservations contained in the case before us. Consequently, when the appellee failed to exercise her right of election, under the lease, her right in that respect passed over to the appellants.

The next question is, did the appellants properly proceed in the appraisement, or attempted appraisement, of the leased ground?

A learned author states the law in cases analogous to this, to be that " Where a lease stipulated that at the close of the term the value of the building should be appraised by persons to be chosen by the parties, and that the lessor should purchase the buildings of the lessee at the price so set by the appraisers, it was held, that before the lessee could sue for the value of the buildings he must show that he had done all that was reasonably in his power to have the appraisement made; that having shown this, and that his efforts had been vain, he might then sue for the fair value. * * * The duty of procuring the decision of the referee in cases like the foregoing rests primarily upon the party who will have the claim for payment; *i. e.,* upon the plaintiff in the suit to be brought after the right of action shall have accrued. He

must use his best exertions to bring about and perfect the agreement of reference. And it seems that his failure to bring it about will enable him to institute suit without delay, only in case the .obstacle to his success has grown out of the contumacious action of the other party. The debtor can not, by preventing the perfection of the reference, escape the liability to be sued." Morse Arb. & Award, 94.

As to the proper remedy to be pursued in cases similar to, or of the general class of, the one made by the cross complaint in this case, there is some conflict in the authorities.

In the case of *Milnes* v. *Gery,* 14 Vesey Jr. 400, which has become a leading case of its class, it was held that where a sale was provided for in a lease at a price to be fixed by two persons to be mutually chosen, or by an umpire to be appointed by the persons so chosen in case of disagreement, and where the appraisers failed to agree upon the price, or the person to be appointed as umpire, a bill would not lie for a specific performance of the contract of sale, upon the ground that the contract was incomplete and inoperative until the price was determined according to the provisions of the lease, and that case has been followed by some cases in this country, notably those of *Greason* v. *Keteltas,* 17 N. Y. 491, and *Hopkins* v. *Gilman,* 22 Wis. 476, holding that for the wrongful failure to complete an agreement for reference, the proper remedy was by action at law for the recovery of damages. The doctrine of that case has, however, generally been followed by the courts of the United States, only in a limited and restricted sense, and is mainly applied only to contracts for reference in which, by the form and language of the stipulation, the mode of determining the price by values, on arbitration, is made an essential provision—in fact condition—to the validity of the agreement, and to cases in which the parties can be easily placed *in statu quo,* or where an action for damages can be made to afford an adequate remedy.

There is another recognized class of contracts providing a

mode for ascertaining the price of property by arbitration or reference, in which the language used in the stipulation is treated as non-essential, and as more in the nature of a suggestion, regarding the stipulation itself as virtually an agreement to sell the property at a fair price.

Concerning this latter class of contracts, Pomeroy in his work on the Specific Performance of Contracts, says:

" If the means specified for fixing upon the price fail for any reason, the court does not treat the contract as fatally defective; but will, in the suit for a specific performance, direct a fair and reasonable price to be ascertained in some manner preliminary to the decree, either by referring the matter to a master or other officer, or by appointing a skilled person as a special valuer, or even by determining the amount itself; it will pursue any such mode as the circumstances of the case show to be expedient. The tendency of the later English decisions is to consider these stipulations for a determination of the price by third persons, rather as matters of form than of substance; to construe them in such manner that they become incidental only to the main object of the agreement. * * The result is, that while the doctrine of *Milnes* v. *Gery*, and of the class of cases to which it belongs, has not been repudiated, and is even now enforced, yet it is carefully restricted to the kind of contracts already mentioned; the court will treat the contract as falling within the second class, unless it would thereby do violence to the language and thwart the plain intent of the parties." Sections 148–152, and notes.

Waterman, in his treatise on Specific Performance, states the rule to be that " Specific performance can not be enforced of an agreement that property shall be sold at a price to be determined by valuers, if no valuation be made; nor the appointment of valuers decreed, or any other mode of determining the price be substituted by the court, unless there has been such acquiescence in, or part performance of, the contract, as would render it inequitable not to enforce its execu-

Coles *et al. v.* Peck.

tion, in which case the court will determine what is a fair value." Wat. Spec. Per., section 44.

In Wood on Landlord and Tenant, pp. 673–4, it is said : " Where the lease contains a covenant for the renewal of a lease, on a valuation or appraisal by arbitrators, and the lessor will not comply with the terms of the covenant, and agree upon arbitrators or submit the matter to them, a court of equity will not decree a specific performance of that part of the covenant, but will receive evidence of the value, and compel the execution of a lease as agreed. * * * If the arbitration fails by reason of the arbitrators chosen being unable to complete the reference, and the parties failing to agree on another umpire, the lessee may maintain an action of an equitable nature to compel the execution of a renewal lease, and have a reference to ascertain what the amount of rent should be."

In the case of *Tscheider* v. *Biddle*, 4 Dillon, 55, a case very similar to the one at bar in many of its essential facts, the court stayed the proceedings in an action at law for the collection of rent until the lessor should appoint an appraiser to value the land in accordance with the terms of the lease.

As bearing on the same general subject, reference is made to the following cases : *Lowe* v. *Brown*, 22 Ohio St. 463 ; *Tobey* v. *County of Bristol*, 3 Story, 800 ; *Biddle* v. *Ramsey*, 52 Mo. 153 ; *Hug* v. *Van Burkleo*, 58 Mo. 202.

The weight of American authority unmistakably supports the conclusion that in cases of the same general character as this, equity will take jurisdiction and grant such relief as may seem to be most expedient, or most in accord with the spirit of the agreement looking to the sale of the property.

We do not hold that the report of the arbitrators chosen by the appellants in this case is conclusive upon the appellee as to the value of the leased lot. We hold only that the averments of the cross complaint are sufficient to show that the appellants have done all that they reasonably could do to

consummate the agreement for reference contained in the lease, and have, for that reason, presented a good *prima facie* case for equitable relief. *Strohmaier* v. *Zeppenfeld*, 3 Mo. Ap. 429. See, also, *Lowe* v. *Brown*, *supra; Hall* v. *Warren*, 9 Ves. Jr. 605; *Gourlay* v. *Duke of Somerset*, 19 Ves. 429; *Dinham* v. *Bradford*, L. R., 5 Ch. Ap. 519; *Richardson* v. *Smith*, L. R., 5 Ch. Ap. 648; *Gregory* v. *Mighell*, 18 Ves. Jr. 328; *Jackson* v. *Jackson*, 19 Eng. L. & E. 545; *Dunnell* v. *Keteltas*, 16 Abb. Pr. 205; *Arnot* v. *Alexander*, 44 Mo. 25; *Biddle* v. *Ramsey*, *supra; Kelso* v. *Kelly*, 1 Daly, 419; *Backus's Appeal*, 58 Pa. St. 186; *Norris* v. *Jackson*, 3 Giff. 396; *Parker* v. *Taswell*, 2 De G. & J. 559; *Jackson* v. *Jackson*, 1 Sma. & Giff. 184.

The judgment is reversed, with costs, and the cause remanded for further proceedings.

