# PARSONS *v.* AMBOS.

1. Agreements whereby the validity and effect of a contract, or the rights of the parties, are submitted to arbitration may operate to oust the courts of jurisdiction, and are so far contrary to public policy that the submission may be revoked at any time before the award.

2. But this rule does not prevent parties to a contract of sale from stipulating that the value of the property shall be appraised as a condition precedent to the right to sue for the purchase-price.

3. Such stipulation is as to a mere incident not affecting the substance of the contract, and is irrevocable by the act of the parties.

4. A revocation of such common-law submission, however, results, by implication of law, from the death of the umpire, or from the fact that an award actually made was set aside by a decree of a court of chancery.

5. Where the stipulation is revoked by operation of law, and the contract itself does not provide for a resubmission, the courts can not impose such terms.

6. Where, from the death of an umpire or from a decree setting aside the appraisement, there is an implied revocation of a stipulation to submit the value of land to appraisers, rights of parties remain unaffected, and the contract can not be rescinded by the acts of either party.

7. In an exchange of land it was stipulated that the value of the respective parcels should be fixed by appraisers. Their finding was set aside by decree. In the meantime the umpire died. One of the parties then notified the other that he revoked the submission and rescinded the contract, and demanded possession of the land; and, on refusal of the demand, he filed an equitable petition for ejectment and cancellation, and, in the alternative, prayed that the court would fix the value of the respective parcels and render judgment for the difference in the value of the two lots. *Held,* that, in so far as it sought to recover the land and cancel the contract, the suit could not be maintained, but that the petition should have been retained for the purpose of having the court determine the difference in value of the two lots and render a money judgment accordingly.

Argued October 7,—Decided October 17, 1904.

Equitable petition.　　Before Judge Cann.　　Chatham superior court.　April 16, 1904.

From the petition and its exhibits it appears that Parsons owned a lot in Thunderbolt, near Savannah, which Ambos desired to secure, and that Ambos owned land through which Parsons desired to obtain a right of way for a railroad.　Being unable to agree as to the value of the property, they entered into a written contract, May 26, 1890, by which it was agreed, that Parsons should convey his lot to Ambos, and that Ambos should convey to Parsons the right of way referred to; that each was thereby let into the actual possession of the land contracted to be conveyed to him; that the right of way should be fenced in by Parsons and his assigns, and, in case it was not used for the railroad, Ambos should have the right to repurchase; that the deeds should be made as soon as the price to be paid should be ascertained; and "lastly, it is hereby mutually convenanted and agreed that upon proper measurement of the quantity of land in such right of way, which shall be done immediately, the excess in value shall be paid for by the party which gains such excess in value of land, at a price to be ascertained by appraisers, to be mutually appointed as follows:" each party to appoint one appraiser, and these two a third, "and a majority of said appraisers shall determine and fix the values of said lot of land, and of the land covered by said right of way, and the value of said excess, and such value shall be paid to the party entitled thereto."　The parties entered into possession, and, under the terms of the submission, an award was made, but, by mutual consent, it was set aside.　Subsequently two "arbitrators" or appraisers found that the right of way to be conveyed by Ambos was worth $600 more than the lot in Thunderbolt to be conveyed by Parsons.　Parsons filed a bill in the superior court of Chatham county, to have this second award set aside, because of the bias and prejudice of one of the arbitrators, and because it was based upon illegal evidence.　A decree setting aside the award was affirmed by a judgment of the Supreme Court, as reported in 116 Ga. 22.　Thereafter (at what time does not appear) Parsons notified Ambos in writing that "the said submission to arbitration and award is revoked," and, on November 11, 1902, filed the present petition.　The petition alleges, that "he has tendered to the said Ambos the tract of land described in

said submission as a right of way, and has demanded of him the above-described tract owned by your petitioner; that the said Ambos refuses to take back his land, and refuses to deliver to your petitioner the above-described tract belonging to him; . . that the judgment of the court . . setting aside the award of the arbitrators renders the submission to said arbitration void; that there can be no further arbitration; that one of the arbitrators, . . Bourquin, is dead, and that only in a court of equity can the differences between petitioner and said defendant be adjusted, and your petitioner receive the relief to which he is entitled." Wherefore he prays, that he be decreed to be the owner of the tract of land now in the possession of Ambos; that the submission to arbitration and award be cancelled and declared void; that the defendant be required to deliver to him peaceable possession of the land; and, "if it should be decreed that this property is the property of the said Ambos, and said submission should not be set aside, that this court proceed to determine the values of the respective tracts, and mould its decree so as to finally adjust the differences between petitioner and defendant and do full justice in the premises." He prays also for general relief and process. To this petition the defendant demurred on the grounds, that the petitioner is not entitled to the relief prayed for; that it appears from the petition that he is not the owner of the land mentioned, but that the defendant is the owner, and that the petitioner has no right of action against the defendant, and is not entitled to any of the remedies prayed for. The demurrer was sustained, and Parsons excepted.

*David C. Barrow*, for plaintiff.
*R. R. Richards* and *Adams & Adams*, for defendant.

LAMAR, J. In a contract for the exchange of land the parties agreed that each should be let into possession of the respective lots, and that the value should be immediately fixed by appraisers. Each party entered. One appraisement was had, and it was set aside by mutual consent. A second appraisement was attacked by bill in equity, and finally set aside by a decree at the instance of Parsons, the plaintiff in error. In the meantime the umpire died. Subsequently Parsons elected to revoke the submission, and to rescind the contract, offering to surrender the land

received by him, and demanding possession of the lot into which Ambos had been let.  This demand having been refused, Parsons brought equitable ejectment, praying for rescission, for injunction against further action by the arbitrators, and, in the alternative, praying, if the court held he was not entitled to such relief, that a decree be entered, fixing the value of the respective lots, and adjusting the rights of the parties.  This petition was met by a demurrer which raises the question as to whether the contract amounted to an agreement to oust the courts of jurisdiction; whether the agreement to submit to appraisers was revocable at the election of Parsons, and, if not, whether the same was not revoked as matter of law, in view of the death of the umpire and the fact that the previous finding had been set aside by a decree.

Courts favor the submission of controversies to speedy and inexpensive tribunals of the parties' own selection, and generally, in the absence of fraud or palpable mistake, will not interfere with their findings, even though a verdict of a jury to the same effect might be set aside as contrary to law. But the underlying reason for the recognition of the award is found in the fact that the parties not only agreed to submit their differences, but voluntarily permitted the agreement to be executed, and consented for the award to be actually made by judges of their own selection.  The mere executory agreement to submit is generally revocable.  Otherwise nothing would be easier than for the more astute party to oust the courts of jurisdiction.  By first making the contract and then declaring who should construe it, the strong could oppress the weak, and in effect so nullify the law as to secure the enforcement of contracts usurious, illegal, immoral, or contrary to public policy.  Civil Code, § 3668.  A common-law agreement, therefore, to submit the validity and effect of a contract, or to submit all matters in dispute, to arbitration, may be revoked by either party at any time before the award.  (For statutory awards, see Civil Code, § 4486.)  Some of the early cases put this rule upon the ground that a provision whereby the courts may be ousted of their jurisdiction is repugnant to that other provision, implied in every contract, that its validity and effect shall be determined by the courts and the law of the land.  But whether predicated on the idea that the agreement is repugnant to the contract, or to public policy, the principle is universally

recognized that such general submissions are revocable. But this does not mean that nothing can be submitted, nor that the parties may not stipulate that certain facts must be determined by those of their own choosing. For example, in building contracts it is manifest that there must be some one other than a court or jury to pass on the question as to whether there has been a compliance with the specifications as the building proceeds, or to determine whether the work shall be accepted or rejected as completed. Hence, there may be a lawful and irrevocable stipulation for the certificate of the architect or engineer. In contracts of insurance the assessment of the amount of damages may be made a condition precedent to a suit by the insured on the policy. So too in contracts of sale, the parties may stipulate for the opinion of an attorney as to the validity of the title, or that the value of the property shall be ascertained by appraisers before either has the right to sue.

This fixing of values, however, is a mere incident, and not of the substance of the contract. It rather serves the office of evidence, than of a finding which construes the contract or determines rights. The jurisdiction of the courts over these substantial matters may be retained by revocation though the incidental stipulation for a valuation is not revocable by the act of the parties, each of whom is bound to do all that is reasonably in his power to procure the appraisement, and must continue to act until he puts the opposite party in the wrong, or makes it manifest that no suitable person can be obtained to do the service within a reasonable time. Hood v. Hartshorn, 100 Mass. 121. Yet, while this stipulation can not be revoked by the act or fault of a party, it may be revoked by operation of law. For example, the appraisement must be made within the time named, or within a reasonable time. The submission may be revoked by the refusal of the appraisers to act; by the death of a party, or by the death of an appraiser or umpire; and, where there is no agreement for resubmission, it may also be revoked by the failure of the appraisers to agree, or when an award, actually made, is subsequently set aside by a decree. See Black v. Harper, 63 Ga. 752 (3); Evans v. Sheldon, 69 Ga. 113. And this is true for the reason that the validity and effect of such agreements depends on the consent of the parties and the terms of the contract. The

courts have no power to order a resubmission where the contract itself makes no provision therefor. What is said in Hood v. Hartshorn, supra, must be construed in the light of the peculiar facts of that case. There the arbitrators failed to agree. One refused longer to serve. Subsequently he reconsidered and agreed to act. One of the parties contended that the time had gone by, and that under the circumstances he was not bound further to attend, and that a revocation resulted. It is true, however, that some of the reasoning of the court is to the effect that a fair interpretation of the contract required reasonable effort to obtain suitable arbitrators who would agree. If, however, this case be treated as sustaining the contention of defendant in error, the general rule is to the effect that the failure to agree, refusal to act, or death of a party, arbitrator, or umpire, operates to revoke a common-law submission, and, under such circumstances, the court possesses no power to compel the parties to select other arbitrators, though, if the revocation is brought about by death or the act of the law, neither of the parties can be made to suffer therefor. Schreiner v. Cummins, 63 Pa. St. 375 (9, 10); Sutton v. Tyrrell, 10 Vt. 91 (death of umpire); Wolf v. Augustine, 181 Pa. St. 576; Potter v. Sterrett, 24 Pa. St. 412.

But the implied revocation applies here only to that incidental provision in the contract providing a means for the ascertainment of the value of the land,—not to a rescission of the contract itself, nor could the death of the umpire or the decree setting aside the award defeat the rights of the parties, or the equity each had in the land to be conveyed whenever the price was settled. Neither could either of the parties rescind the contract. It had been partly performed, possession had been taken, each had the right to improve the land held, there may have been a change in value, and this change may have been unequal in degree, the market price of one lot may have risen and that of the other declined. It would be inequitable to permit either to rescind because the appraisers failed to agree, or because the appraisement made was set aside, or because the umpire died. The demurrer, therefore, to so much of the petition as sought a cancellation of the contract and a recovery of the land by Parsons was properly sustained; but the case should have been retained, for the sole purpose of fixing the value of the lots and entering a money decree

in favor of the party entitled thereto.    *Leonard* v. *House,* 15 *Ga.* 473; Kaufmann v. Leggett (Pa.), 58 Atl. 129 (3).

*Judgment reversed.    All the Justices concur.*