[No. 21491. Department Two. May 22, 1929.]

P. B. HOLDRIDGE, *Appellant,* v. LLOYD GARRETSON *et al., Respondents.*[1]

[1]Reported in 277 Pac. 982.

*Grady & Velikanje* and *Henderson, Carnahan & Thompson,* for appellant.

*Rigg & Brown, C. W. Halverson* and *S. F. McAnally,* for respondents.

MAIN, J.—This action was brought to enforce the terms of a written contract for the sale of fifteen thousand shares of the capital stock of a corporation. To the second amended complaint, which will be referred to as the complaint, a demurrer was interposed and sustained. The plaintiff refused to plead further and elected to stand upon his complaint. A judgment was entered, dismissing the action, from which he appeals.

The Lloyd Garretson Company, a corporation, was engaged in business in the city of Yakima. The appellant owned fifteen thousand shares of its capital stock, of the par value of one dollar per share, and the respondent forty-five thousand shares. The respondent was the managing director, and the appellant was employed by the corporation and devoted his time to its affairs. Differences arose between these two stockholders, and November 18, 1925, they entered into an agreement by which the appellant agreed to sell, and the respondent agreed to purchase, the former's stock. This agreement, after making certain recitals, provides:

"Now, THEREFORE, for the purpose of arriving at the value of said stock and the price which shall be paid by the first party to the second party for his stock in said corporation, it is mutually agreed between the parties hereto as follows:

"That first party will purchase of the second party and the second party will sell to the first party all of.

the shares of stock in said corporation which are now owned by the second party at a price to be fixed as herein provided. . . .

"In order to arrive at the present fair market value of said stock, it is mutually agreed that the assets of said company shall be appraised by three appraisers, one of whom shall be appointed by each of the parties hereto, and the two so appointed shall select a third who shall constitute a board of appraisers for the purposes aforesaid. . . .

"Each of the parties hereto shall select the persons to act as his appraisers within ten days from the signing of these presents, and such appraisers so selected shall immediately thereafter meet and select the person who shall act as the third member of said board of appraisers, and as soon as the inventory shall have been furnished the said appraisers shall meet at the place of business of the company and proceed to appraise the property and assets of the company and place thereon a fair market value as of the date of said appraisement, taking into consideration not only the physical assets of the said company, but also the good-will of said business, accounts, railroad claims, and all other property of said company of every kind and character.

"Said appraisers shall make their report in writing and a copy of the same shall be furnished to each of the parties hereto.

"It is further agreed that, for the purposes of this agreement, the said appraisers shall act as a board of arbitration, but that neither party shall introduce any evidence before said board other than the examination to be made by said board of the assets of the company, and that the findings and report of said board shall be final and conclusive between the parties hereto and binding upon them, and that either of the parties hereto may give the same the force and effect of a judgment, as provided by Section —— of Remington's Compiled Statutes of Washington, 1922, it being the intention of the parties hereto that this agreement shall be construed as a statutory arbitration agree-

ment, as provided by the statutes of the state of Washington.

"It is Further Agreed between the parties hereto that, if, for any reason, the said board of three appraisers shall not be able to agree upon the market value of said stock, the third member of said board who has been selected by the two first appointed by the parties hereto, shall be released and discharged and the two appointed by the parties shall proceed to select a new third member of said board, who shall act with the other two, and such method shall be continued until three appraisers have been selected and who shall be able to agree upon the valuation of said stock. . . .

"It is Further Agreed that, whenever the second party shall have been paid in full for his said stock, each party hereto will execute and deliver to the other a full receipt and release of all claims and demands held by each against the other."

It will be observed that the contract provides that the price of the stock shall be fixed by a board of appraisers who shall act as a board of arbitration. The complaint alleges that the respondent was the managing director of the corporation, and that the appellant held a position therewith and devoted his time and energy to its affairs. It is further alleged that certain differences had arisen between the parties relative to claims and accusations made by the appellant against the respondent, and that such claims and accusations were of such a nature as to involve the parties in litigation, and had engendered personal animosities, making it impossible for them to longer work together. It is further alleged that the appellant refrained from prosecuting his claim against the respondent, and severed his connection with the management of the affairs of the corporation. No mention is made in the contract of either of these matters as constituting a part of the consideration therefor.

230

▮▮ Whether the complaint stated a cause of action depends, first, upon whether the contract had, in part, been executed by the appellant severing his connection with the corporation and abandoning his claim against the respondent on account of the other matter which had arisen between the parties, the precise nature of which is not set out. If, upon the trial, the respondent would be permitted to prove the considerations not mentioned in the contract, it may be said that the complaint states a cause of action. Inquiry must here be directed as to what is the rule by which the courts will be guided in determining whether a contract will be enforced, which provides that the price of a thing sold shall be fixed by appraisers or arbitrators, and there has been an abortive attempt to so fix the price. It is well settled that, where a contract has been partly performed and is no longer wholly executory, or where the provision for arbitration or appraisement relates merely to an incident such as arriving at the purchase price of the property, or the parties cannot be placed *in statu quo,* the failure of the appraisement or of the arbitration will not absolve the parties from the obligation of the contract, as the courts will enforce it and fix the value. In *Cogswell v. Cogswell,* 70 Wash. 178, 126 Pac. 431, it is said:

"The rule is well established that where the contract has been partly performed and is no longer wholly executory, or where the provision for arbitration relates only to a mere incident, such as the arriving at the price of property or the determination of its rental value, the death or failure of the arbitrators to act gives neither party to the contract the right to rescind. In such a case the courts will enforce the contract and will, on evidence, fix the value of the land or determine the rental. *Parsons v. Ambos,* 121 Ga. 98, 48 S. E. 696; *Cooke v. Miller,* 25 R. I. 92, 54 Atl. 927; *Bledsoe v. Rader,* 30 Ind. 354; *Coles v. Peck,* 96 Ind. 333, 49

Am. Rep. 161; *Grosvenor v. Flint,* 20 R. I. 21, 37 Atl. 304; *Viany v. Ferran,* 54 Barb. 529; *Town of Bristol v. Bristol & Warren Water Works,* 19 R. I. 413, 34 Atl. 359, 32 L. R. A. 740.''

In *Castle Creek Water Co. v. City of Aspen,* 146 Fed. 8, by the Federal circuit court of appeals for the eighth circuit, it was said:

"Where in a contract of sale of real estate at a price to be fixed by appraisers chosen by the parties, the stipulation for the valuers is not a condition nor the essence of the agreement, but is subsidiary or auxiliary to its main purpose and scope, and the parties may not be left or placed *in statu quo* by a refusal to enforce the contract, a court of equity may determine the price itself, by its master or by appraisers of its own selection, and may enforce specific performance of the agreement of sale. But where the stipulation for the appraisers is a condition or the essence of the contract of sale, and a refusal to enforce it will leave the parties in their original situations when the agreement was made, a court of equity will not specifically enforce it. *Union Pac. Ry. Co. v. Chicago, R. I. & P. Ry. Co.,* 51 Fed. 309, 330, 2 C. C. A. 174, 244; *Tscheider v. Biddle,* 4 Dill. 58, 62, Fed. Cas. No. 14,210; *Cherryvale Water Co. v. City of Cherryvale,* 65 Kan. 219, 69 Pac. 176, 180; *Town of Bristol v. Bristol & Warren Waterworks,* 19 R. I. 413, 34 Atl. 359, 361, 32 L. R. A. 740; Fry on Specific Performance, §§ 247, 342, 348; Waterman on Specific Performance, §§ 44, 47; Pomeroy on Contracts, §§ 150, 151; *Coles v. Peck,* 96 Ind. 333, 339, 49 Am. Rep. 161; *Herman v. Babcock,* 103 Ind. 461, 3 N. E. 142; *Biddle v. Ramsey,* 52 Mo. 153, 159; *Black v. Rogers,* 75 Mo. 441, 449; *Braintree Water Supply Co. v. Braintree,* 146 Mass. 482, 487, 16 N. E. 420; *Parson v. Ambos,* 121 Ga. 98, 48 S. E. 696; *Hall v. Warren,* 9 Ves. Jr. 605; *Gourlay v. Duke of Somerset,* 19 Ves. Jr. 429; *Richardson v. Smith,* L. R. 5 Ch. 648; *Dinham v. Bradford,* L. R. 5 Ch. 518."

Whether the appellant in the present case can show that the contract has been in part executed by his

waiver of the claim mentioned and the severing of his active connection with the corporation, depends upon whether the method provided in the contract by which the price of the stock was to be fixed was a term or condition thereof. If it was a term or condition of the contract, then, upon the trial, the appellant could not introduce testimony to vary or modify its terms. In Page on the Law of Contracts, vol. 4, § 2166, it is said:

"If the consideration appears in the written contract as a contractual term thereof, an oral agreement whereby an additional or other consideration is provided for violates the parol evidence rule and is unenforceable. The fact that the consideration is set forth as a contractual term implies that no other consideration exists."

As stated in *Shannon v. Prall*, 115 Wash. 106, 196 Pac. 635, it is not always easy to determine whether a particular contract "falls within the class of writings which are of a contractual nature." Every case, of course, must depend largely upon its own facts. In the present case, the contract specifies that the price of the appellant's stock shall be fixed by appraisers, who shall act as a board of arbitrators. It provides in detail how the arbitrators shall be chosen, and, if they cannot agree, the two arbitrators chosen by the respective parties shall choose a third. It also provides that, as to the value of the stock, the decision of the arbitrators shall be unanimous. When attention is given to all the provisions of the contract relating to the manner of the fixing of the price, the conclusion seems to be irresistible that the fixing of the price by appraisers or arbitrators was not a mere incident of the contract, but a contractual term or condition thereof. This being true, the allegations of the complaint, which would show the contract in part executed and thereby bring it within the rule that the court

would fix the price where there was an abortive attempt by arbitration, could not be supported upon the trial by evidence because to do so would vary or modify a condition or term of the contract.

In reaching this conclusion, we have not overlooked the recital in the last paragraph of the contract to the effect that, when the stock shall have been fully paid for, each party will execute and deliver to the other a receipt and release of all claims and demands. In view of the other provisions of the contract, this recital cannot be construed as referring to some other or additional consideration. It is said, however, that the parties cannot be placed *in statu quo*, and therefore the right of the court to fix the price exists. This depends upon facts which, as already pointed out, could not be shown upon the trial because they would vary or modify the terms of the written instrument.

It is also suggested that, since the contract provided that it should be construed as a statutory arbitration agreement, therefore it should be enforced. The answer to this is that neither of the parties has attempted to enforce the arbitration or appraisement to which two of the parties agreed, but which was not acquiesced in by the third. The contract provided that, as to the value of the stock, the three appraisers or arbitrators should agree. Section 422, Rem. Comp. Stat., provides that arbitrators, after they have qualified, shall make their award "agreeably to the terms of the submission." The terms of submission here were that, as to the value of the stock, though not as to the assets specifically, the three arbitrators should agree. The parties had the right to so provide.

The judgment will be affirmed.

MITCHELL, C. J., FRENCH, MILLARD, and BEALS, JJ., concur.