## 64968. HILTON CONSTRUCTION COMPANY, INC. v. MARTIN MECHANICAL CONTRACTORS, INC.

QUILLIAN, Presiding Judge.

The appellant filed in the lower court a petition to vacate an arbitration award under the Federal Arbitration Act, 9 USCA § 1 et seq. The petition alleged that under Section 10 of that Act (9 USCA § 10) upon a proper showing being made, a court may enter an order vacating an arbitration award. The appellee answered, denying the material allegations of the complaint, and by way of counterclaim

asserting it was entitled to a judgment confirming the award.

Both sides moved for summary judgment. After discovery, the filing of briefs and a hearing pursuant thereto, the trial judge entered an order denying the appellant's motion for summary judgment and granting appellee's motion, thereby refusing to vacate the arbitration award and instead confirming such award. Appeal was taken to this court. *Held:*

1. The threshold question in the case sub judice concerns the applicability of the Federal Arbitration Act, specifically Section 10. That section reads: "In either of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration — (a) Where the award was procured by corruption, fraud, or undue means. (b) Where there was evident partiality or corruption in the arbitrators, or either of them. (c) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced. (d) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."

There is no question that Georgia courts have dealt with the Federal Arbitration Act. See *West Point-Pepperell v. Multi-Line Indus.,* 231 Ga. 329 (201 SE2d 452); *Paine, Webber, &c., Inc. v. McNeal,* 143 Ga. App. 579 (239 SE2d 401); *Tasco Indus. v. Fibers & Fabrics of Ga.,* 162 Ga. App. 593 (292 SE2d 439). This results because jurisdictional grounds are basically the same for arbitration proceedings as other cases.

Title 9 USCA does not provide an independent source of federal jurisdiction. Subject matter jurisdiction must exist through source other than this title, such as diversity of citizenship or a federal question. Hamilton Life Ins. Co. of New York v. Republic Nat. Life Ins. Co., 291 FSupp. 225 affirmed in 408 F2d 606; Litton RCS, Inc. v. Penn. Turnpike Comm., 376 FSupp. 579 affirmed in 511 F2d 1394; Commercial Metals Co v. Balfour, Guthrie & Co., 577 F2d 264.

Section 3 and Section 9 (9 USCA §§ 3 and 9) have been considered by state courts and their language clearly refers to both state and federal courts. Section 3 reads: "If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, . . . shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, . . ." 9 USCA § 3.

Section 9 reads: "If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title. If no court is specified in the agreement of the parties, then such application may be made to the United States court in and for the district within which such award was made. . . ." 9 USCA § 9.

Both sides have therefore insisted that we must construe and apply Section 10 — each, of course, taking different and opposing positions as to how we should construe and apply it as well as how we should interpret the contract which provided for arbitration. What this glosses over is the express language of Section 10 which we reiterate for emphasis. "In either of the following cases *the United States court in and for the district wherein the award was made* may make an order vacating the award upon the application of any party to the arbitration . . ." (Emphasis supplied.)

There is no provision for a state court to set aside an arbitration award for the reasons provided therein. It is clear from a reading of the entire Act that where the enactors intended for both state and federal courts to apply the Act it was so provided. Therefore, the limiting language in Section 10 unequivocably means that *only* a "United States court in and for the district wherein the award was made may make an order vacating the award" for the reasons therein specified. If Congress intended otherwise why was not language utilized such as that found in Section 3?

Although the trial judge in refusing to vacate the award treated the merits of such issue, his judgment was correct for the reason we have outlined.

2. Having found the award could not be vacated by the Clarke Superior Court, we now consider the judge's authority to confirm the award.

Section 9 of the Arbitration Act provides that the contracting parties may specify a court where the award may be confirmed or in lieu thereof "application may be made to the United States court in and for the district within which such award was made. . . ."

The contract in this case recited: ". . . The award rendered by the arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof." The contract did not specify what court but by use of the language "any court" obviously included state courts. Therefore, the

Clarke Superior Court could confirm the award and since the award had not been vacated, modified or corrected under Sections 10 or 11, the trial court was required to grant confirmation under Section 9.

*Judgment affirmed. Shulman, C. J., concurs. Carley, J., concurs specially.*

DECIDED FEBRUARY 3, 1983 —
REHEARING DENIED MARCH 29, 1983 —

*David W. Porter, David A. Rabin,* for appellant.
*Robert D. Marshall,* for appellee.

CARLEY, Judge, concurring specially.
I agree that the judgment of the trial court should be affirmed. However, I cannot join the majority in the reasoning it utilizes to arrive at that conclusion. The majority correctly states that there is no independent source of federal jurisdiction over arbitration proceedings under the Federal Arbitration Act and that "[s]ubject matter jurisdiction must exist through source other than [Title 9 USCA], such as diversity of citizenship or a federal question." It appears that there was no such independent basis of federal jurisdiction in this case and that the proceeding was properly brought in the Superior Court of Clarke County. However, I cannot embrace the majority's construction of the relevant portions of Title 9 USCA so as to hold that a state court otherwise having jurisdiction over the proceeding has authority to affirm but not to vacate an award of an arbitrator. I see absolutely no difference in meaning of the words "in any of the courts of the United States . . ." as used in Section 3 and the import of "United States court in and for the district wherein the award was made . . ." as utilized in Section 10. Since under circumstances of this case, the Superior Court of Clarke County had jurisdiction over this proceeding, it could take any action which could be taken by a federal court having jurisdiction over the case.
Therefore, the trial court was correct in reaching and ruling upon the merits and, in reviewing this case, we must determine the correctness of that ruling. The essence of this case is that appellants contend that either appellee herein, Martin Mechanical Contractors, Inc., or another subcontractor, Stephenson Associates, Inc., was responsible for certain defects in the work under their respective subcontracts. Appellee instituted arbitration proceedings with appellants. Appellants repeatedly requested of the arbitrator that

Stephenson be made a party to the arbitration. However, at no time prior to the award, did appellants demand arbitration as to Stephenson or seek any judicial direction. Stephenson was never a party to the arbitration between appellants and appellee and is not a party to this proceeding. In fact, appellants did not file a demand for arbitration as to Stephenson until five months after the award. Although the trial court opined that had appellants instituted arbitration vis-a-vis Stephenson, a motion to consolidate at that time and before an award may have been appropriate, the trial court further concluded that the record showed that the arbitrator had no power or authority to compel joinder of Stephenson and that, therefore, there was no abuse of the arbitrator's power which would justify vacation of the award. I believe that the trial court was correct and that its judgment should be affirmed.

On Motion for Rehearing.

The movant argues that the Federal Arbitration Act must be applied in its entirety. The Georgia cases do not so hold.

The two cases, which are cited by movant and were cited in the opinion, deal with the principle that state policy must yield to the express command of federal law where interstate commerce is involved, not that the Federal Arbitration Act has been engrafted into the state law by command of Congress. Indeed, as we shall see, this is diametrically opposed to congressional intent.

In *West Point-Pepperell, Inc. v. Multi-Line Indus.,* 231 Ga. 329, 331 (201 SE2d 452) the Georgia Supreme Court held: "Where such a transaction involves commerce, within the meaning of the Federal Arbitration Statute, the state law and policy with respect thereto must yield to the paramount federal law." The court quoted Section 2 of Title 9 USC that: " 'A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.' " The court held that the Georgia policy, expressed in such cases as *Parsons v. Ambros,* 121 Ga. 98 (1) (48 SE 696) which held that arbitration agreements operating to oust courts of jurisdiction are void, must yield to national policy where the transaction involves interstate commerce. The court explained: "The United States Arbitration Act was intended to avoid the common law rule that an agreement between parties to a contract to settle any dispute between them by arbitration was void and against

public policy as an effort to oust the courts of their jurisdiction."

In *Paine, Webber &c. v. McNeal,* 143 Ga. App. 579 (239 SE2d 401) the court followed the *West Point-Pepperell* case, supra, and recognized that federal law is paramount. In that case the appellee argued that Georgia courts are bound only by substantive portions of the Act and not by the federal procedural law. The court agreed sub silentio by finding that Georgia law provided a remedy without resort to federal law, specifically to 9 USC § 3 which provides for a stay of proceedings pending arbitration.

There has been a body of holdings in the lower federal courts to the effect that where the Federal Arbitration Act is applicable, it constitutes national substantive law which must be upheld by courts of general jurisdiction in each of the states. See Robert Lawrence Co. v. Devonshire Fabrics, Inc., 271 F2d 402, 406; Commercial Metals Co. v. Balfour, Guthrie & Co., 577 F2d 264. It should be noted that those cases are dealing with application of the law by federal courts. Moreover, the only federal court whose opinions we are bound to follow, the United States Supreme Court, has declined to make such a broad ruling. In Prima Paint v. Flood & Conklin, 388 U. S. 395, 404-405 (87 SC 1801, 18 LE2d 1270) the court held that with regard to the Federal Arbitration Act ". . . federal courts are bound in diversity cases to follow state rules of decision in matters which are 'substantive' rather than 'procedural,' or where the matter is 'outcome determinative.' [Cit.] The question in this case, however, is not whether Congress may fashion federal substantive rules to govern questions arising in simple diversity cases. [Cit.] Rather, the question is whether Congress may prescribe how federal courts are to conduct themselves with respect to subject matter over which Congress plainly has power to legislate. The answer to that can only be in the affirmative."

The dissent in that opinion pointed out that: "The Court here does not hold today, as did Judge Medina [Robert Lawrence Co. v. Devonshire Fabrics Inc., 271 F2d 402, 407, supra] that the body of federal substantive law created by federal judges under the Arbitration Act is required to be applied by state courts. A holding to that effect — which the Court seems to leave up in the air — would flout the intention of the framers of the Act." Prima Paint v. Flood & Conklin, supra at p. 424. It included documentation from the Congressional Record as to the statutory intent: " 'The primary purpose of the statute is to make enforcible in the Federal courts such agreements for arbitration, and for this purpose Congress rests solely upon its power to prescribe the jurisdiction and duties of the Federal courts.' One cannot read the legislative history without concluding that this power, and not Congress' power to legislate in the area of

commerce, was the 'principal basis' of the Act. Also opposed to the view that Congress intended to create substantive law to govern commerce and maritime transactions are the frequent statements in the legislative history that the Act was not intended to be 'the source of . . . substantive law.' " Supra, at 418-419. An incisive statement from the Joint Hearings, p. 28, was quoted: "Nor can it be said that the Congress of the United States, directing its own courts . . ., would infringe upon the provinces or prerogatives of the States. . . . [T]he question of the enforcement relates to the law of remedies and not to substantive law. The rule must be changed for the jurisdiction in which the agreement is sought to be enforced. . . . There is no disposition therefore by means of the Federal bludgeon to force an individual State into an unwilling submission to arbitration enforcement."

Georgia has a method of and a basis for attacking an arbitration award as is set forth in *Locklear v. Payne,* 124 Ga. App. 845 (1) (186 SE2d 439): "Where, under the agreement, the decision of such third persons is to be final, the decision, if within the scope of the agreement, may only be attacked for fraud, or such gross mistake as would necessarily imply bad faith or the failure to exercise an honest judgment . . . The law favors an end to litigation and, where the parties agree to submit their dispute to another for settlement and that such settlement shall be final, the matter will be reopened only on an affirmative showing of fraud, accident, or mistake."

Thus, one is not deprived of a valuable right nor is the paramount federal policy favoring arbitration in any way diminished by a Georgia court applying its own state law vis-a-vis grounds for setting aside an award rather than the grounds that federal district courts are required to utilize.

We note that a perusal of the multitudinous decisions involving 9 USC are virtually all by federal courts except in certain rare instances such as Western Constr., Inc. v. Oregon-Southern, 101 Idaho 145 (609 P2d 1136), involving a collective bargaining agreement, which case recognized that because of the all pervasive command of the Labor Management Relations Act that federal law and the Federal Arbitration Act would be applied in its entirety by the state court.

In summary, the Federal Arbitration Act expresses a policy that arbitration agreements arising out of a transaction involving interstate commerce are to be enforceable by all courts of this land. However, the all inclusive aspects of the Act are directed only to the federal courts who must apply this law in its entirety regardless of former federal decisions in this area and regardless of the law of the situs state of such federal court.

Under the circumstances here, we find no plainly manifest congressional intent to impose the same statutory grounds — explicitly detailed as a basis for a federal district court to set aside an arbitration award — on a state court which is passing upon such matters.

Since the predicate for setting aside the award in the case sub judice were violations of 9 USC § 10 which was not applicable to this case, and since we also note there is nothing to show a reason for setting aside the award under Georgia law, we adhere to our decision affirming the decision of the lower court.

*Rehearing denied.*

CARLEY, Judge.

While I agree with the majority that the Motion for Rehearing should be denied, I cannot concur in what the majority says in its addendum filed in connection with the Motion for Rehearing. Therefore, I adhere to my special concurrence to the original majority opinion.