SOUTHERN LUMBER CORPORATION v. DOYLE et al.

DOYLE et al. v. SOUTHERN LUMBER CORPORATION.

(District Court, E. D. South Carolina. December 5, 1912.)

1. SPECIFIC PERFORMANCE (§ 81*)—CONTRACTS ENFORCEABLE—CONTRACT FOR SALE OF STANDING TIMBER—AGREEMENT FOR ESTIMATE OF QUANTITY.

Complainant contracted to sell to defendant two tracts of timber land and the standing timber on a number of other tracts, the price to be a stated sum per thousand feet of the merchantable timber on all the tracts, to be determined by a named person as estimator, whose estimate should be conclusive. The agreed instructions delivered to such estimator defined what should be considered merchantable timber to include such as would be cut by a good lumberman under the then economic conditions prevailing in the county, and required the estimator to personally instruct his cruisers, and to personally make the office computations from the data collected in the field. *Held*, that the acceptance of such estimator was of the essence of the contract, and that where fraud was not proved, and there was not such performance as would prevent placing the parties in their original situation, a court of equity could not, at suit

of one of the parties, set aside the estimate, have a new one made by a person selected by the court, and then decree a specific performance of the contract based thereon, which would be to enforce a contract the parties had never made, and perhaps would not have made.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. § 215; Dec. Dig. § 81.*]

2. SPECIFIC PERFORMANCE (§ 130*) — CROSS-BILL FOR RESCISSION — RELIEF WHICH MAY BE GRANTED.

In such case, where complainant refused to accept the estimate, and brought suit to obtain a new one and a specific performance, and defendant on such refusal gave notice of rescission, and filed a cross-bill therefor, the court has power, on an equitable adjustment between the parties of cross-claims growing out of a partial payment by defendant, and the cutting of timber by defendant in reliance on the contract, to decree a rescission as of the date of decree, leaving to either party his right of action at law to recover damages for breach of contract.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 424, 425; Dec. Dig. § 130.*]

In Equity. Suit by the Southern Lumber Corporation against George A. Doyle, H. J. Thieker, Julia Doyle, and J. A. Thrall, copartners as the Winyah Lumber Company, with a cross-bill. On final hearing. Decree in part for each party.

Willcox & Willcox, of Florence, S. C., for complainant.

Walter Hazard, of Georgetown, S. C., Howard Cornick, of Knoxville, Tenn., and J. P. K. Bryan, of Charleston, S. C., for defendants.

SMITH, District Judge. This case came on to be heard upon the pleadings, the testimony, and the report of the special master, and counsel for all parties having been fully heard, it is thereupon adjudged as follows:

On the 19th day of April, 1909, the Southern Lumber Corporation entered into a contract with the defendants, as copartners under the firm name of the Winyah Lumber Company, for the sale of the standing timber upon some 13 different tracts of land, and also of 3 parcels of land containing in the aggregate some 732 acres. The price to be paid for all the timber and land so agreed to be sold was to be $2 per 1,000 feet for all the merchantable pine, cypress, and poplar timber upon all the tracts, except as to one tract, upon which the price was to be at the rate of $1.50 per 1,000 feet; in other words, all the standing timber and land agreed to be sold were to be sold for a price to be measured by the aggregate amount of the merchantable pine, cypress, and poplar timber upon all the tracts, upon which the price was to be computed at the rate of $2 per 1,000 feet, except in the case of one tract, in which case it was to be computed at the rate of $1.50 per 1,000.

The contract further provided that the parties should at the earliest possible moment secure the services of Messrs. C. A. Schenck & Co., of Biltmore, N. C., as inspectors and estimators, who should be charged with the duty of inspecting and estimating the timber upon the said several tracts of land, and whose report and estimate, when filed by them in writing in duplicate with the parties to the contract, should

be deemed and taken to be final and conclusive. The contract further provided that, immediately upon the filing of the report and estimate of the inspectors, the plaintiff, the Southern Lumber Company, should execute and tender to the Winyah Lumber Company a proper deed or deeds of conveyance for all the said timber and land, and the Winyah Lumber Company, the defendants, should upon the tender of such deed of conveyance pay the purchase price to be determined in the manner above set forth. Upon the execution and delivery of the contract the defendants paid to the complainant the sum of $500 on account of the purchase price of the property.

In accordance with the provisions of the contract the services of C. A. Schenck & Co. were secured as inspectors and estimators, and the parties in May, 1909, signed a memorandum, which was delivered to Messrs. C. A. Schenck & Co., containing the instructions to govern C. A. Schenck & Co. in making their conclusions as to the matters referred to them under the contract. These instructions contained the following provisions:

"3. A merchantable tree belongs to a merchantable kind like pine (long leaf, short leaf, and spruce pine), cypress, cedar, poplar, red oak, and must contain merchantable logs, viz., logs of such size and quality which a good lumberman, understanding his business, would cut and is used to cut under the present economic conditions now prevailing in Horry county. We rely on the judgment of C. A. Schenck and of his cruisers in this connection, and their judgment shall be final.

"4. The amount of lumber contained in the merchantable trees shall be ascertained by C. A. Schenck as that number of feet b. m., one inch thick, which a good millman would obtain from the merchantable logs, contained in the trees under the economic conditions now prevailing in Horry county. The cruisers' tally shall show the merchantable kinds, the number of trees, the diameters at breast height, and the number of merchantable logs contained in the trees. * * *

"6. C. A. Schenck shall personally instruct and superintend his cruisers, and none of the parties signing this instrument shall have the right to give the cruisers any instructions.

"7. All of the office computation of data collected in the field shall be done by C. A. Schenck."

C. A. Schenck & Co. sent their cruisers to the locality, who went there and examined the timber and made a report thereon; and thereafter, on or about the 4th day of August, 1909, C. A. Schenck & Co. filed with the respective parties to the contract a written report in duplicate, wherein they reported the entire amount of the merchantable pine, cypress, and poplar timber located and contained upon the various tracts of land mentioned in the contract to be 2,410,741 feet board measure.

Immediately upon the receipt of the report of C. A. Schenck & Co. by the complainant, the Southern Lumber Company, it expressed dissatisfaction with the report, and claimed it to be incorrect, and insisted upon C. A. Schenck & Co. making a new estimate, which was refused by C. A. Schenck & Co. Upon the filing of the report of C. A. Schenck & Co. the defendants notified the complainant that they were ready and willing to pay for the timber and receive a conveyance therefor, the purchase price to be paid by them to be based upon the estimate and report of C. A. Schenck & Co. The complainant, fail-

ing to procure a re-estimate from C. A. Schenck & Co. of the timber on the land, thereupon on January 21, 1910, filed the bill of complaint in this case, in which it alleges that the complainant had insisted that the estimate of the said C. A. Schenck & Co. was incorrect, grossly unfair, and constituted a fraud upon the rights of the Southern Lumber Company, but expressed its willingness, upon a proper estimate being made, to comply with the terms of the contract, to which proposition the defendants refused their assent. The bill further alleges that the estimate of C. A. Schenck & Co. was grossly inaccurate and the result of gross partiality to the defendants, and of such gross negligence or incompetence as to constitute it a fraud on the complainant's rights; the timber on said lands amounting at least to 9,075,000 feet.

The bill of complaint further alleged that, notwithstanding the plaintiff had refused to execute the conveyance for the timber based on the estimate of C. A. Schenck & Co., the defendants had nevertheless gone upon the lands embraced in the contract, and had cut and removed, and were still cutting and removing, the timber therefrom, and that the complainant was ready to carry out its contract as soon as a correct estimate of the amount of the timber should be made, and prayed an injunction against the defendants, requiring them to cease trespassing upon and cutting and removing the timber from the premises described until a conveyance should be made to the defendants, after an ascertainment of the amount of standing timber on the premises under the direction of the court, and asking that the defendants be required to account for the quantity of timber cut and removed from the premises.

The bill is not very specific in the terms of its prayer as to what relief is desired by the complainant from the court, beyond the injunction against the continuance of the trespass and cutting of the timber and an accounting for the timber cut and removed. The language of its second prayer is principally for an injunction, although the pleading has been treated in argument upon the assumption that it was a prayer that the court should set aside the estimate made by C. A. Schenck & Co., and then decree that a new estimate should be made under the order and direction of the court, and require the defendants to pay the purchase price computed according to the results of such new ascertainment, and thereupon that the decree of conveyance be made to the complainant by the defendants according to the terms of the contract. The pleading has been treated as if a decree of that kind was asked, although the terms of the prayer are very indefinite; but treating it as if such were the case, and giving to complainant the benefit of whatever relief the allegations of the bill would warrant, then the bill of complaint is a bill chiefly for specific performance, to require the defendants to perform the contract, that is to say, to perform the contract as may be modified by the finding of the court, viz., that the court should set aside the estimate made by C. A. Schenck & Co., and, having set aside that estimate, should require a new estimate to be made by estimators appointed by the court, and then, upon the coming in of that new estimate, should require the defendant to pay to the plaintiff the amount of the purchase price, to be computed according

to the results of such new estimate, and the complainant convey to the defendants the standing timber and lands mentioned in the contract.

The defendants filed their answer, alleging that upon the filing of the report of C. A. Schenck & Co. they had advised the complainant that they were ready to pay the price computed according to the report of C. A. Schenck & Co.; but the plaintiff had refused to receive it, and had refused to execute the conveyance to the land and timber mentioned in the contract. The answer denies that the estimate of C. A. Schenck & Co. was fraudulent, or a fraud upon plaintiff's rights, but, on the contrary, affirmatively alleges that it was carefully, properly, conscientiously, and correctly made, and that the plaintiff was not entitled to the relief demanded. The defendants further admit that they had gone upon the land prior to the completion of the estimate by C. A. Schenck & Co., and had cut certain timber, which is to be settled for by the payment of the contract price upon the estimate coming in, but alleges that this was with the knowledge, consent, and express permission of the plaintiff.

In addition thereto the defendants filed a cross-bill in the case, in which they set up that they had been misled by the statements of the plaintiff as to the amount of timber in entering into the contract complained of, the amount of timber possessed by the complainant having been grossly exaggerated, and this exaggeration having led to the defendants incurring expenses for the utilization of the timber which were not warranted by the actual timber on the land; that nevertheless, upon the coming in of the estimate of C. A. Schenck & Co., they made offer of the purchase price based upon such estimate, but that complainant had refused to receive it; that they tendered the payment required by such estimate to the plaintiff, and required the excution of the deed of conveyance of the timber and land mentioned, but the plaintiff had refused to execute the deed; that the estimate made by C. A. Schenck & Co. was in accordance with the methods adopted in advance with the approval of the complainant, and that the report was impartial and fair, and that there was no gross partiality or unfairness towards complainant, or favoritism shown to defendants; that thereupon, on the 22d of January, 1910, defendants gave notice to complainant, and demanded that complainant comply with the terms of the contract, or that the defendants would regard such failure equivalent to a rescission of the contract, and would declare the same rescinded, which was done; that immediately subsequent to such rescission the defendants had removed their logging railroad and equipment and camps from that locality, and if they were now required to purchase the timber and carry out the contract it would put them to great and unreasonable damage; that they had been put to an expense in procuring the estimate of C. A. Schenck & Co., which was to be paid one-half by each party, of the sum of $462.15; that they had also paid $500 on account of the purchase money, and that at the request of complainant they had paid the other one-half, being its share, of the expenses of C. A. Schenck & Co., amounting to $462.15, making a total of $1,424.30 which the defendants were entitled to recover of the complainant—and pray a decree of the court that the contract be

204 F.—53

declared rescinded, null, and void, and that the plaintiff be decreed to pay to the defendants the amount due as aforesaid.

Due replications having been filed in the case to the bill and cross-bill, the matter was by the court referred to a special master, to take the testimony and also to find the facts from the testimony taken, which was done. To the findings of fact of the special master the defendants have excepted. The complainant has filed no exceptions to his findings.

[1] The first question for the determination of the court upon the hearing of the cause is as to the right of the complainant to the relief sought under the allegations of the bill of complaint. The bill, as before stated, is a bill for specific performance of a contract for the sale of standing timber and land. It is, however, different from the usual bill for specific performance of a contract, inasmuch as it requires something to be done affecting the terms of the contract anterior to that performance. It seeks that the court should first set aside the estimate made by the estimators agreed upon in the contract; next, that the court, having set aside that estimate, should have an estimate made by estimators of its own—that is, to be appointed by the court—and that upon the coming in of the said new estimate, and its confirmation by the court, that the court should decree specific performance of the contract based upon such new estimate, as if that were the estimate named in the contract.

The bill is not the ordinary bill to set aside an award made in a case of arbitration. Where parties have by agreement submitted certain questions to arbitrators, and the arbitrators make an award, a bill can be filed in equity for the purpose of setting aside, or in proper cases enforcing, that award. If the award be set aside, unless the cause contains other elements of equitable jurisdiction, the function of the court of equity ceases, and the parties are remitted to their legal rights as they stood before the agreement to submit the issues to arbitration. In the ordinary case of actions under a building contract, where the work done and the amount due is to be ascertained by the certificates of an agreed architect or engineer, before action can be brought to recover an amount not authorized by the certificate given, the certificate made must be first set aside, which can be done by a proceeding in equity, and then the parties are remitted to their actions at law as if no such certificate had been made or required, unless the case presented is one which permits the court to proceed and administer entire relief. Under the present bill, however, more than that is required. It is not a bill limited to setting aside an award, or setting aside an estimate by agreed estimators; but, in addition to that, it seeks to have a new estimate made by the court, and, after that estimate is made, then to have specific performance decreed, so that three things are sought to be done by the court: (1) To set aside the estimate; (2) to have a new estimate made under the direction of the court; (3) to decree specific performance based upon that new estimate.

In this case by the terms of the contract certain specified persons were agreed upon to make the estimate, viz., C. A. Schenck & Co.

They were the estimators agreed upon and relied upon by parties, either of whom had the right to refuse to enter into the contract at all unless the estimate which was to fix the price should be made by estimators agreeable to them. In other words, the making of the contract at all was subject to the will of the two parties. They had a right to consent to make the contract only upon the condition, if they chose to insert it, that the estimate should be made by estimators accepted by them as competent for the purpose.

The contract expressly names C. A. Schenck & Co. as the persons to make the estimate. An examination of the contract and of the instructions subsequently given shows that there was reposed in the persons so selected to make an estimate a great deal of power in the way of determination of the amount of timber to be paid for. They are to estimate the quantity of the "merchantable" timber, merchantable both as to size and quality, and as to such as would be cut under the "then economic conditions prevailing in Horry county." It will be seen from this that the use of the word "merchantable" in itself implies a great power of selection on the part of the estimators. They could omit all trees which were not up to size or quality, or which were in their opinion not merchantable. It may be, also, that they could omit all trees which from their location or position or environment were not merchantable, in the sense that it would not be economically possible to utilize them for sawmilling purposes. They could not be cut and hauled to the mill for the purpose of being sawed at a price which would be remunerative. All these are elements of selection in the contract, the determination of which was left to the judgment of C. A. Schenck & Co.

Further it was stipulated in the instructions that C. A. Schenck should himself personally instruct and superintend his cruisers, and make all the office computation from the data collected in the field. Under these circumstances it is evident that the parties might well consider the person selected to make an estimate as of the highest importance. He should be a person of such wide knowledge and experience, both in the matter of the knowledge of trees themselves, or forestry, and in the knowledge of the practical handling, cutting, and sawing of trees, as would qualify him to judge what trees were, from size, quality, position, and environment, merchantable timber within the meaning of the contract. While a party to the contract might be willing to submit the making of such an estimate to the determination of one person, whom he considered entirely qualified, he might reasonably be wholly unwilling to submit them to the determination of another, chosen by some one else.

The acceptance of C. A. Schenck & Co. as estimators to make the estimate was reasonably of the essence of the contract. If of the essence of the contract, for the court to undertake to substitute new estimators in the lieu and place of C. A. Schenck & Co. would be in effect to make a new contract for the parties. The court could not set aside the estimate as made, and require C. A. Schenck & Co. to make a new estimate. C. A. Schenck & Co. are not before the court. They are not even shown to be within the jurisdiction of the court. A new

estimate, if made, would have to be made by some one selected by the court, probably wholly disconnected with C. A. Schenck & Co., and possibly unacceptable to either party. It would be substituting the court's opinion of a competent person for the opinion of the parties to the contract.

The case is different from the case where there is simply a general provision that the matter should be submitted to arbitrators or estimators, without particular persons being selected or agreed upon as such. In that case the personnel of the arbitrator is not made a part of the contract; the substantive part of the contract is simply that there should be an arbitration or an estimate. The exact person who shall make that estimate has not been considered of sufficient importance to incorporate it in the contract as a part of the conditions upon which either party assents to it. Where a contract embodies, as incidental to its main purpose, that there should be an arbitration or estimate of matters of fact or results of computation, and not that that estimate or award should be made by a particular selected person, the court may in a proper case proceed, and decree that the estimate or award should be made, and in certain cases select a person to make the estimate or award. But where the person to make the estimate should be one who should possess special qualifications and capacity for the purpose, and is so specifically agreed upon and chosen as to be a substantive part of the contract, so as that the contract is not simply that an estimate or an arbitration should be made, but that the estimate or arbitration should be made only by a specified person, then for the court to appoint a different person to make it would be in effect to make a new contract.

To illustrate: Suppose that C. A. Schenck had refused to be employed for the purpose as contemplated by the contract, or suppose that C. A. Schenck, who by the contract was personally to perform certain specified functions, had died before the work of estimation should be entered on. It seems to the court that in such case there is little doubt but that, unless the parties could agree upon a new person to act, the contract would have failed, because the party agreed upon as a substantive part of the contract to make the estimate refused or was not able to do so. The rule seems to be that:

"Where, in a contract of sale of real estate at a price to be fixed by appraisers chosen by the parties, the stipulation for the valuers is not a condition nor the essence of the agreement, but is subsidiary or auxiliary to its main purpose and scope, and the parties may not be left or placed in statu quo by a refusal to enforce the contract, a court of equity may determine the price itself by its master or by appraisers of its own selection, and may enforce specific performance of the agreement of sale. But where the stipulation for the appraisers is a condition or the essence of the contract of sale, and a refusal to enforce it will leave the parties in their original situation when the agreement was made, a court of equity will not specifically enforce it." Castle Creek Water Co. v. City of Aspen, 146 Fed. 8, 76 C. C. A. 516, 8 Ann. Cas. 660 (C. C. A., 8th Cir.).

See, also, Union Pac. Ry. Co. v. Chicago, 163 U. S. 564, 16 Sup. Ct. 1173, 41 L. Ed. 265; Coles v. Peck, 96 Ind. 333, 49 Am. Rep. 161.

The exceptions to the rule that a court of equity will not enforce a contract, where the stipulation for the particular estimator was of

the essence of the contract, would seem to be where, under the terms of the contract, one party places himself in such position by the execution or part execution of his part of it, relying in good faith upon the estimate being thereafter made, that it is impossible for him to be placed in his original situation, or where it is established that the failure to have the estimate made as required by the contract has been due to the fraud or fraudulent procurement of the other party, and that the conditions have been so altered that an action at law would give no adequate relief to the party injured.

The present cause does not appear to fall within the category of either of these exceptions. The complainant, anterior to its refusal to accept the estimate of C. A. Schenck & Co., was not called upon under the contract to do, nor is it shown to have actually done, anything in reliance upon the future estimate so changing its position as to make it inequitable to leave it to its legal rights under the contract. Nor does it appear from the testimony now before the court that the defendants have acted fraudulently in the procurement of the estimate of C. A. Schenck & Co., or in the evasion of the contract.

The special master finds that the estimate made by C. A. Schenck & Co. was "grossly incorrect," and that the evidence establishes to his mind that there was merchantable timber upon the lands largely in excess of the amount reported by C. A. Schenck & Co. He further finds that no officer, agent, or employé of the complainant accompanied the estimators sent over the lands by Schenck & Co., nor was the complainant advised when the estimate would be made, but that employés of the defendants accompanied the estimators for some time at least, and assisted them in "cruising the lands." He further finds that C. A. Schenck did not personally superintend his cruisers, or leave his place of business near Asheville, N. C., in this regard, and that the estimators were sent from Biltmore, N. C., into Horry county, and were materially assisted by the defendants' employés in their cruises over the lands.

The instructions given by the parties to C. A. Schenck & Co. did not require that C. A. Schenck should personally leave his office in North Carolina to go over the lands. The instructions contemplate that the work in the field should be done by "cruisers" who should be personally instructed and "superintended" by C. A. Schenck, who was personally to do the "office" computation on data collected by these cruisers "in the field." Schenck was to select, instruct, and "superintend" these cruisers. The contract does not seem to contemplate that this "superintendence" included Schenck's own presence in the field.

Without going into a consideration whether the testimony supports the special master's findings on the other points, it is enough to say that his findings are not to the effect that "fraud" was perpetrated by defendants in procuring, or Schenck & Co. in making, the estimate. He finds that Schenck & Co.'s estimate was grossly incorrect as to the amount of timber, but that may result from the different methods of determining "merchantability" and of computing the content in board measure between Schenck & Co. and the witnesses whose testi-

mony is relied on by the special master. There is no such fraud shown by the special master's findings or the testimony now before the court as would bring this case within the category of cases in which the defendant has by his own fraud so procured the nonfulfillment of a contract that a court of equity will decree its specific performance to protect the other party. The court therefore holds that under the circumstances no case is now presented in which, even if the court should set aside the estimate, it should decree a specific performance of the contract.

The next question is as to what decree complainant is entitled under the bill and testimony, which, while refusing a specific performance, may yet leave it open to complainant to assert any legal rights it may have in an action at law for damages. Complainant contends that unless and until the estimate is set aside by a court of equity the complainant will have no right to proceed at law. Under the general rule in this regard complainant would have no right to bring an action *upon* the contract to recover the value of the timber and lands agreed to be sold, other than for the amount according to the estimate, unless that estimate be set aside. If the estimate were set aside for fraud this might leave the complainant free to bring an action for the real value of the timber on the assumption of a true estimate. If the estimate be not set aside, the complainant would be limited in any action under the contract to the amount of the estimate, and under the circumstances of this case and the actions of both parties no action of law would now appear to lie for that amount against the defendants.

This rule, however, does not necessarily apply to an action, not *under,* but for a fraudulent *breach* of, the contract; i. e., if the defendants fraudulently procured a false and fraudulent estimate, for the purpose of evading the contract and compelling the complainant to convey for less than the agreed price, or for the purpose of evading the contract and defeating the proposed sale, then an action at law might lie against the defendants, not under the contract for the true agreed price, but for its fraudulent breach and for the damages thereby caused to the complainant, and this decree is not intended to preclude the assertion of any such legal rights if they exist.

The defendants having received no deed from the complainant, and having themselves refused also to proceed further with the contract, the complainant is entitled to the permanent injunction prayed in the bill against any further cutting or removing of timber.

[2] The cross-complainant having in the cross-bill prayed for a cancellation of the contract of sale, and it appearing that the cross-defendants do not desire a continuance of that contract, unless a new estimate be ordered by the court, the relief sought in the cross-bill will be granted to the extent that the contract will be decreed vacated, but only from the date of the decree herein, and not so as to prejudice any legal rights either party may have against the other anterior to the date of the decree by reason of any breach entitling either to an action at law against the other and not concluded by this decree.

The cross-complainants, having come into the court and affirmatively sought the relief prayed in their cross-bill, and received the relief

awarded by the court thereon, must also be required to submit to the rule that "he who seeks equity must do equity"—a principle applicable not only to the position of the complainant in seeking relief, but to the power of the court in awarding it against him, viz., that one who seeks the aid of a court of equity must accept such terms as the court may impose, under the rules and principles of a court of equity, as the price of the decree given him.

The bill alleges that the defendants cut and removed timber away from the premises without the leave or authority of the complainant. If such be the case, the defendants are liable for the damages of the trespass, and will be required to have the same ascertained and decreed to be paid in this cause as damages inflicted by the defendants by means of the contract now sought by them to be vacated, and must be paid as an equitable condition of the vacating of the contract.

The value of the timber cut by the defendants with complainant's consent from the Macklen tract by consent of complainant is reported by the special master as $306.66, for which the complainant is entitled to a decree against the defendants. The defendants paid $500 on account of the purchase money under the terms of the contract, and further paid $462.15 for the complainant's one-half of the costs and expenses of Schenck & Co., for the total of which, $962.15, the defendants, under the terms of the cross-bill, are entitled to a decree against the complainant.

In addition, the complainant will be entitled to a decree for the other timber cut and removed by defendants from the premises. If it shall have been cut and removed with the consent and permission of complainant, to be paid for at the contract price, then the decree will be for the quantity of timber cut and removed at $2 per 1,000 feet. If, however, it was cut and removed without permission, under circumstances amounting to a trespass, the damages are measured by a very different rule, and should be ascertained by a jury, and in the formal decree to be entered, embodying the results of the conclusions of law and fact herein found, provision will be made for an issue to a jury to ascertain such damages.

The costs in the cause on the original bill will be paid by the defendants, and those arising on the cross-bill by the cross-defendants. The matter of the costs on the issue to be as may be hereafter ordered by the court.