**SETCHELL v. MOORE et al.**

No. 1467.

Circuit Court of Appeals, Tenth Circuit.

March 29, 1937.

Rehearing Denied May 1, 1937.

Emory L. O'Connell, of Denver, Colo. (W. D. Jochems, of Wichita, Kan., and A. X. Erickson, of Denver, Colo., on the brief), for appellant.

A. L. Moffat, of Kinsley, Kan., for appellees.

Before PHILLIPS and BRATTON, Circuit Judges, and JOHNSON, District Judge.

JOHNSON, District Judge.

On January 18, 1932, at Larned, Kan., W. E. and Dora Moore, as parties of the first part, made and entered into a written contract with F. M. Setchell, as party of the second part, providing that:

"For One Dollar and other valuable consideration, the receipt of which is hereby acknowledged, parties of the first part agree:"

"To accept on the purchase price of real estate and any other property herein referred to or mentioned, and, to credit, One Hundred Dollars and accrued interest on the purchase price, for each one hundred dollar share of the Western Power, Light & Telephone Co., stock received by or thru F. M. Setchell or A. X. Erickson as Trustee, on or before July 15th, 1932. (Refers to seven per cent, preferred stock)."

"To, Twenty-four Thousand Dollars ($24,000.00) and seven per cent interest (payable quarterly) on any unpaid balance of said $24,000.00, as the purchase price of:" Then follows a description of the real estate and other property referred to.

The Moores further agreed in the contract, so far as material here:—"To not divulge any information to unconcerned parties regarding any part of this deal until same may have been completed in full."

"To relinquish all rights, and do hereby sell, assign and transfer all our present interests and title in connection with, or on real estate and other properties upon completion of this agreement by or thru second party, to any party or parties as directed by F. M. Setchell. When said purchase price shall have been received, to execute warranty deeds of conveyance to the said real estate with merchantable abstract of title, showing that said properties are free and clear of incumbrance. * * *"

"Upon receipt of at least one-fifth of the said purchase price, to deliver all rents from date of this agreement, to whom directed by second party * * *."

Setchell on his part agreed in the contract:

"To try to effect this deal as stated above, or if impossible to do so, to try to obtain cash or the equivalent in the amount of the purchase price."

"To waive all claim of commission from first parties, in event this deal is made."

"To not divulge information to unconcerned parties regarding this deal until same may have been completed in full."

"To have any stock that may be delivered on this deal properly assigned to first parties, or as they may direct. In case of failure of second party to complete any of the covenants on his part of this agreement to forfeit all payments made if first parties so desire."

The contract also contained this additional agreement on his part:

"In the event second party completes his part of this deal or is able to complete it, he agrees to tender six shares of the above-named stock to first parties on an option to buy a rooming house now known as the (Norwood) in Larned and eighty acres of land located southeast of Larned, Ks. Said rooming house and land to be priced at $8,700.00 net total to first parties ($3200.00 land, $5500.00 rooming house), the six shares of stock to apply as six hundred dollars on purchase price. Balance to be paid on basis of two hundred fifty dollars and seven per cent interest on unpaid balance twice a year on each of the properties beginning six months after this deal is completed and each six months thereafter until paid. Purchaser to pay last half of taxes on said eighty acres and rooming house when due and to receive all rents on said properties from this date."

On October 22, 1932, the Moores brought suit in the district court of Pawnee county, Kan., against Setchell, in which action they sought to have this contract adjudged null and void and ordered canceled and held for naught, and prayed that their title in and to the real property described in the contract be quieted in them, and that the defendant be excluded from any right, title, or interest in or to the same. They also prayed for general relief.

The suit was removed from the state court to the court below by the defendant Setchell. After removal Setchell filed his answer putting in issue the allegations of the petition pertinent to the decision of the case. He also set up as a defense in his answer that the facts alleged in the petition were insufficient to constitute a cause of action in equity. By way of cross-bill he set up the same contract of January 18, 1932, entered into between him and the Moores, and alleged that he had fully performed all the conditions required of him on his part, that he was ready, willing, and able to carry out the contract according to its terms, and prayed specific performance by the Moores. To the cross-bill the Moores filed a reply in which they, as an affirmative defense, repeated in substance and effect the allegations contained in their petition. In the affirmative defense contained in their reply they alleged that the contract was void and contrary to public policy and in violation of certain sections of the Blue Sky Law of the State of Kansas, for reasons in the reply detailed. Among other alleged violations of the Blue Sky Law of the state they alleged that the defendant was engaged in the business of buying the stock of the Western Power, Light & Telephone Company for the purpose of reselling the same to the plaintiffs; that he was not the issuer or owner of said stock; that he was also engaged in the business of selling the stock of other corporations in the state of Kansas; and that he was not a licensed broker or authorized to sell such securities in the state of Kansas.

On April 2, 1935, W. E. Moore having theretofore been adjudged insane, Fay Meador, his duly appointed guardian, was substituted as party plaintiff in the action in his stead. On the 3d of April, 1935, the cause came on for hearing before the trial court, at which time Setchell's attorney informed the court that he was unable to proceed with the trial at that time, and upon plaintiff's application the court made an order referring the case to a referee to take the testimony and report his findings of the facts. Thereafter the case was heard by the referee and findings of the facts reported by him to the trial court.

At the hearing before the referee it was stipulated by defendant's counsel:

"That the defendant F. M. Setchell did not at any time prior to the execution of the contracts referred to in this action, or

at any other time, have a broker's or agent's license to sell or deal in the sale of stock or speculative securities within the State of Kansas."

On the 23d day of March, 1936, the court, upon the evidence and the findings of the facts by the referee, made conclusions of law:

"That the contract referred to in the pleadings of said parties is void and uninforcible for the following reasons, to-wit:"

"Said contract does not have inserted upon the face thereof the notations required by section 17—1239, R.S.Supp. 1931."

"The securities referred to in said contract were not registered in Kansas and their sale had not been authorized as required by the statute."

"The defendant was not at the time of the signing of the contract the owner *of* issuer of said securities mentioned therein."

"The defendant was not a licensed broker, and the transactions in selling said securities were in violation of section 17—1223, Supp.1931 subd. (4)."

"The sales made by the defendant of the securities mentioned constituted repeated and successive sales of the same security."

"Said contract fails to comply with the Statute of Frauds in that there is nothing in the contract describing or identifying a part of the real estate referred to in said contract."

—and thereupon entered its decree wherein it was ordered and adjudged:

"That the contract set forth in plaintiff's petition be and the same is hereby declared void and uninforcible, and said contract is hereby decreed cancelled and set aside, and it is further ordered and decreed that the answer and cross-petition of the defendant for specific performance of said contract be and the same is hereby denied."

■ Counsel for the appellant in their brief discuss the question of the sufficiency of the petition of plaintiffs to support the decree entered in the case. As already indicated, the same issues arose upon the cross-bill and the reply thereto as were stated or attempted to be stated in the petition. Since the findings of the referee and the conclusions and decree of

the trial court logically and legally respond to the issues arising on the cross-bill of appellant and the reply of appellees thereto, it is not necessary to the decision of the case on its merits to pass upon the sufficiency of the petition. In fact, to do so would be a mere idle gesture. Sanders v. Village of Riverside (C. C.A.) 118 F. 720; Southern Lumber Corp. v. Doyle (D.C.) 204 F. 829.

■ As we have seen, the trial court found that the defendant Setchell was not a licensed broker and the transactions in selling said securities were in violation of section 17—1223 Supp.1931, subd. 4. That section of the statute in part reads:

"(4) 'Broker' shall mean and include every person, other than an agent, who sells directly or through an agent any securities of which he is not the issuer. 'Broker' shall also include every person, other than an agent, who engages, or professes to engage, either for all or part of his time, directly or through an agent, in the business of purchasing or otherwise acquiring any securities of which he is not the issuer for another or for the purpose of reselling same to others, or of accepting and executing buy and sell orders for such securities for a commission, or of buying, selling, or otherwise dealing or trading in such securities for a commission or at a profit, whether such securities are exempted by section 2 hereof or are sold by such person acting as representative in a manner exempted by section 3 (1) hereof or not. Any person who acts as promoter for and on behalf of an issuer to be formed shall be deemed a broker. 'Dealer' shall mean 'broker' as herein defined.

"(5) 'Issuer' shall mean and include every person who proposes to issue, has issued, or shall hereafter issue any securities.

"(6) 'Agent' shall mean and include every person, other than a broker, employed, appointed or authorized, by an issuer or broker to do anything subject to the provisions of this act. The term 'agent' shall not include the partners of a partnership or officers of a corporation or association licensed as a broker or for whom securities are registered. 'Salesman' shall mean agent as herein defined."

In addition to the foregoing section, section 17—1230, 1931 Supp.R.S.Kan.1923, in part reads:

"17—1230. Registration of brokers. No broker shall engage in business in this state as such broker, or sell any security, including securities exempted in section 2 of this act, except in transactions exempted under section 3 of this act, unless he has been registered as a broker in the office of the bank commissioner pursuant to the provisions of this section."

Setchell could not lawfully sell the stock of the Western Power, Light & Telephone Company without a broker's license unless the transaction came within the exemption of section 3 of the act above mentioned (R.S.Supp.Kan.1931, 17—1225). This section in part reads:

"The provisions of this act, except as herein expressly provided, shall not apply to sales of the following character:

"(1) Any isolated sale of any security by the issuer or owner thereof, or by a representative for the account of such issuer or owner, such sale not being made in the course of repeated and successive sales of securities of the same issue by such issuer or owner or by such representative for the account of such issuer or owner."

The evidence taken at the hearing before the referee and his findings thereon support the conclusion of the court that the defendant Setchell was a broker within the meaning of the statutes above quoted. But in addition to the extraneous evidence introduced at the hearing before the referee, an inspection of the contract, in connection with the situation of the parties at the time it was made, convinces that Setchell himself intended to deal with the Moores as a broker. The record shows that prior to the date of this contract the Moores had purchased from or acquired through Setchell shares of this same stock. In his cross-bill he alleged that "on and prior to the 18th day of January, 1932, plaintiffs were the owners of a large number of shares of stock of the Western Power, Light & Telephone Company * * *; that on or about the 18th of January, A. D. 1932, plaintiffs expressed a desire to the defendant for additional shares of said stock issued by said company, and thereupon plaintiffs and defendant entered into" the contract.

Remembering now that the Moores were desirous of obtaining more shares of this stock, that they had previously acquired this stock from him or through

him, and having expressed a desire to obtain additional shares, he and they make the agreement by which in exchange for certain real estate and other property for a stipulated price of $24,000, he would attempt to fill the order at $100 per share for the stock, provided he was given until the 15th day of July next to do so. In the contract the Moores agreed in consideration of one dollar and other valuable consideration, receipt of which was acknowledged:

"To accept on the purchase price of real estate and any other property herein referred to or mentioned, and, to credit, One Hundred Dollars and accrued interest on the purchase price, for each one hundred dollar share of the Western Power, Light & Telephone Co., stock received by or thru F. M. Setchell or A. X. Erickson as Trustee, on or before July 15th, 1932. (Refers to seven per cent, preferred stock.)"

"To, Twenty-four Thousand Dollars ($24,000.00) and seven per cent interest (payable quarterly) on any unpaid balance of said $24,000.00, as the purchase price of:"

Then follows the description of the property.

The Moores further agreed:

"To not divulge any information to unconcerned parties regarding any part of this deal until same may have been completed in full."

"To relinquish all rights, and do hereby sell, assign and transfer all our present interests and title in connection with, or on real estate and other properties upon completion of this agreement by or thru second party, to any party or parties as directed by F. M. Setchell. When said purchase price shall have been received, to execute warranty deeds of conveyance to the said real estate with merchantable abstract of title, showing that said properties are free and clear of incumbrance."

By these agreements the Moores were to accept 240 shares of the Western Power, Light & Telephone Company's stock for the real estate and other property described. They agreed to sell, assign, and transfer this property upon the receipt of this stock "to any party or parties as directed by F. M. Setchell." So far as the undertakings upon the part of the Moores are concerned, it might well be that Set-

chell was acquiring this property for himself by means of an exchange of the stock for the real estate and other property, but we note that he on his part agreed:

"To try to effect this deal as stated above, or if impossible to do so, to try to obtain cash or the equivalent in the amount of the purchase price."

"To waive all claim of commission from first parties, in event this deal is made."

"To not divulge information to unconcerned parties regarding this deal until same may have been completed in full."

"To have any stock that may be delivered on this deal properly assigned to first parties, or as they may direct. In case of failure of second party to complete any of the covenants on his part of this agreement to forfeit all payments made if first parties so desire."

"To try to effect this deal as stated above, or if impossible to do so, to try to obtain cash or the equivalent in the amount of the purchase price," is the language of a broker. "To waive all claim of commission from first parties, in event this deal is made," is also the language of a broker. The commission waived might either refer to a commission to be claimed from the Moores on account of the sale or exchange of their real estate and other property, or it might relate to a commission to be claimed on the stock purchased or acquired for them to be paid for by the conveyance of the real estate. In either case it would be a broker's commission. In addition, both parties agreed to "not divulge information to unconcerned parties regarding this deal until same may have been completed in full." This arrangement for secrecy implies that Setchell contemplated making his profit by obtaining the corporation stock from third parties at less than $100 per share, or by the sale to third parties of the real estate and other property for more than $24,000, or by both. If third parties with whom he might deal knew nothing of his arrangement, they would not be influenced by it. He further undertook to have "any stock that may be delivered on this deal properly assigned to first parties, or as they may direct." Nowhere so far has Setchell assumed any financial obligation whatever, nor does he in fact do so or intend to do so in the provision that "in case of failure of second party to complete any of the cove-

nants on his part of this agreement to forfeit all payments made if first parties so desire." As his only covenants were to try to effect the deal as stated or to obtain cash or its equivalent, if he did try and failed, no forfeiture under this provision could be enforced, and in addition to the fact that under the contract he was not required to make partial payments, the record shows he made no tender of any stock until he tendered the 246 shares mentioned in the contract. By this contract the defendant Setchell did not buy or undertake to buy the Moores' real estate and other property, nor did he sell or agree to sell to them one share of the Western Power, Light & Telephone Company's stock. He only agreed to try to secure 240 shares of this stock for the Moores at $100 a share, to be paid for by the real estate and other property, provided he could make the deal in some way.

Apparently as an afterthought there was added to the contract the paragraph above quoted, reading:

"In the event second party complete his part of this deal or is able to complete it, he agrees to tender six shares of the above-named stock to first parties on an option to buy a rooming house now known as the (Norwood) in Larned and eighty acres of land located southeast of Larned, Ks. Said rooming house and land to be priced at $8,700.00 net total to first parties ($3200.00 land, $5500.00 rooming house), the six shares of stock to apply as six hundred dollars on purchase price. Balance to be paid on basis of two hundred fifty dollars and seven per cent interest on unpaid balance twice a year on each of the properties beginning six months after this deal is completed and each six months thereafter until paid. Purchaser to pay last half of taxes on said eighty acres and rooming house when due and to receive all rents on said properties from this date."

The language of this paragraph leaves much to the imagination respecting this so-called option to buy "a rooming house now known as the (Norwood) in Larned and eighty acres of land located southeast of Larned, Ks." Assuming that this language referred to some understanding or agreement theretofore entered into between Setchell and the Moores, it will be noted that in this reference no description of the eighty acres of land located

southeast of Larned is given, no consideration moving to the Moores for the option is mentioned, and it fails to disclose any agreement on the part of the Moores to perform. But passing by these omissions, as the so-called option involves six shares of the stock which is involved in the main contract, that paragraph must stand or fall with the main contract.

Section 17—1240, 1931, Supp.R.S.Kan. 1923, provides that: "Every sale or contract for sale made in violation of any of the provisions of this act shall be voidable at the election of the purchaser." The contract between the Moores and Setchell was in violation of section 17—1223, Supp.1931, subd. (4), and was unenforceable against the Moores when they so elected.

The judgment of the trial court is affirmed.